[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS**
***for the* District of Columbia Circuit**

| | | |
|---|---|---|
| ALI HAMZA AHMAD SULIMAN AL BAHLUL, *Petitioner,* | ) | No. 11-1324 |
| *v.* | ) | RESPONSE TO THE UNITED STATES' MOTION TO REQUIRE COUNSEL TO DEMONSTRATE AUTHORITY TO PURSUE APPEAL OR, IN THE ALTERNATIVE, TO DISMISS |
| UNITED STATES OF AMERICA, *Respondent.* | ) | DATE: November 17, 2011 |

This Court should reject the government's proposed inquest into Mr. Bahlul's relationship with his counsel. Congress set up an appeals process for military commissions that is modeled on the Uniform Code of Military Justice. 10 U.S.C. §§ 801, *et seq*. Under that process, a criminal defendant has a right of appeal to both the Court of Military Commission Review ("CMCR") and to this Court. 10 U.S.C. §§ 950f, 950g. A defendant can forfeit his appellate rights by executing a waiver within ten days after the Convening Authority's action, or withdrawing his appeal anytime thereafter. 10 U.S.C. § 950c(b) & (c). Congress has prescribed rules to ensure that military commission defendants' relinquishment of their appellate rights is knowing, intelligent and voluntary, and the Secretary of Defense has specified procedures that further reinforce this requirement.

There is no provision for an appeal to be deemed withdrawn by implication. There is no evidence in the record that Mr. Bahlul waived his rights of appeal. By the government's own admission Mr. Bahlul knows how to terminate his appeal if he so chooses and has declined every opportunity to do so.

Rather than evidence that Mr. Bahlul does not wish his appeal to be pursued, all that the Government has offered this Court are statements he has made to challenge the authority of his military commission and express dissatisfaction with the entire process. Far from being grounds to terminate the appeal, or question it going forward, his objections echo the very grounds on which he now appeals.

Absent a far clearer showing that the process Congress put in place has broken down, this Court should deny the government's motion so that this case may proceed without further delay.

## STATEMENT OF FACTS

Prior to adjourning the military commission on November 3, 2008, the trial judge advised Mr. Bahlul of his post-conviction rights, including the right of direct appeal to this Court and procedures for waiving or withdrawing his appeal if he so desired. (Trial Tr. at 995-997 (included in Appendix A to the government's motion)). The judge directed that a copy of this appellate rights advice be translated into Arabic, Mr. Bahlul's native language, and given to him. (*Id*. at 997). Mr. Bahlul has never submitted a waiver or withdrawal in this case.

On May 8, 2009, the Chief Defense Counsel appointed Michel Paradis as appellate defense counsel for Mr. Bahlul. Subsequently, the Chief Defense Counsel appointed Major Todd Pierce, USA, and Captain Mary McCormick, USN, as additional counsel on the case.

Over the past three years, counsel filed several pleadings with the CMCR. In January 2010, counsel presented oral argument to the CMCR in support of Mr. Bahlul's appeal. Thereafter, counsel litigated on Mr. Bahlul's behalf by, *inter alia*, requesting review *en banc*, seeking recusal of two CMCR judges, briefing two issues specified by the *en banc* court, and by presenting a second oral argument at the CMCR's request on March 17, 2011. At no time did counsel for the government object to counsel's authority or lodge any inquiries to that effect with counsel directly or with the Chief Defense Counsel as provided by regulation. REG. T. MIL. COMM. §§ 10-1, *et seq*. (2007) (Attachment A to this filing).

Following an adverse decision by CMCR, counsel continued to proceed as they had by filing a timely petition with this Court. 10 U.S.C. § 950g(c). Counsel entered appearances, complied with the Court's order for initial filings, and entered into an agreement with government counsel for the timing of a briefing schedule. Government counsel entered appearances on September 20, 2011. The index and other required filings were subsequently lodged with the Court. On October 31, 2011, government counsel filed the subject motion.

## ARGUMENT

### I. Congress Created a Detailed Appellate Process for Military Commissions that Guarantees an Accused the Right to Appeal and Sets the Parameters for his Representation by Counsel.

Over ten years of experience and experimentation, Congress has legislated a detailed post-conviction process for military commissions, which is largely modeled on the post-trial process of the Uniform Code of Military Justice. 10 U.S.C. §§ 801, *et seq*. The primary difference between the two is that military commission defendants have a right to a direct appeal to an Article III court, namely this Court, instead of a discretionary appeal to the U.S. Court of Appeals for the Armed Forces. 10 U.S.C. § 950g. Consistent with court-martial practice, appeals proceed in the absence of an affirmative act by the client to forfeit his appellate rights. 10 U.S.C. § 950c (requiring waiver or withdrawal); *compare* 10 U.S.C. § 861 (same). *See United States v. Engle*, 28 M.J. 299, 300 (C.M.A. 1989) ("[U]nless he has obtained permission from his client to do so, an appellate defense counsel should not on his own initiative move to withdraw a petition for review.").

If the accused wishes to forfeit his appellate rights, and he has not been sentenced to death, Congress provided a simple mechanism for the accused to formally waive or withdraw his appeal. 10 U.S.C. § 950c. Congress required that any waiver be made in writing and "be signed by both the accused and a defense counsel." 10 U.S.C. § 950c(b). While the statute is silent as to the form of

withdrawal, the rules have consistently required requests to withdraw be in writing, made under the advice of counsel, and signed by both the accused and defense counsel. MANUAL FOR MILITARY COMMISSIONS, pt. 2, Rule 1110 (2010);[1] REG. T. MIL. COMM. § 24-3 (2007).[2]

---

[1] **Rule 1110. Waiver or withdrawal of appellate review.**

(a) *In general*. After any military commission, except one in which the approved sentence includes death, the accused may waive or withdraw appellate review.

(b) *Right to counsel*.

> (1) *In general*. The accused shall have the right to consult with counsel qualified under R.M.C. 502(d)(1) before submitting a waiver or withdrawal of appellate review.

* * *

(c) *Compulsion, coercion, inducement prohibited*. No person may compel, coerce, or induce an accused by force, promises of clemency, or otherwise to waive or withdraw appellate review.

(d) *Form of waiver or withdrawal*. A waiver or withdrawal of appellate review shall:

> (1) Be written;
>
> (2) State that the accused and defense counsel have discussed the accused's right to appellate review and the effect of waiver or withdrawal of appellate review and that the accused understands these matters;
>
> (3) State that the waiver or withdrawal is submitted voluntarily; and
>
> (4) Be signed by the accused and by defense counsel.

[2] On November 7, 2011, the Secretary of Defense promulgated a new "Regulation for Trial by Military Commission." The revised regulation did away with the general appellate withdrawal provision and limited itself to the procedures to be followed by the CMCR. The reason for this change is unclear, although appears to

Congress further mandated that, throughout all phases of the appeal process, a person convicted by military commission "shall be represented" by counsel funded by the Department of Defense. 10 U.S.C § 950h(c) ("The accused shall be represented by appellate counsel appointed under subsection (a) before the United States Court of Military Commissions Review, the United States Court of Appeals for the District of Columbia, and the Supreme Court, and by civilian counsel if retained by the accused."). The appointment of counsel is automatic and requires no affirmative act by the accused. Even if the accused retains civilian counsel on appeal, counsel appointed under the statute must remain detailed to the defense team. 10 U.S.C § 950h(c).

Congress provided the statutory authority for the Office of the Chief Defense Counsel to serve as a separate governmental agency to administer and oversee the conduct of defense counsel at all phases of the military commission process. 10 U.S.C. § 948k(d). The Secretary of Defense, pursuant to authority granted by Congress under 10 U.S.C. § 948k(a), designated the Chief Defense Counsel as the sole authority for appointing counsel on appeal. REG. T. MIL. COMM. § 24-4

---

be in recognition of the Department of Defense's lack of regulatory authority over this Court or the Supreme Court. See Reg. T. Mill. Comm. §§ 1-1(b); 24-7(c) ("Counsel should refer to the Court's Rules at www.cadc.uscourts.gov to ensure all filings are in compliance with the Federal Rules of Appellate Procedure and the Circuit Rules."); 24-8(e) ("See the Rules of the United States Supreme Court at www.supremecourtus.gov for requirements on filing materials before the Court.").

(2007). The Office of the Chief Defense Counsel has administered the representation of military commission defendants from the beginning. Complex cultural, linguistic and logistical challenges have provided learning experiences that continue to inform current client representations. As a consequence, the Chief Defense Counsel and his attorneys bring to bear unique knowledge and expertise.[3]

Based on that expertise, the Office of the Chief Defense Counsel has instituted formal rules and procedures that govern the conduct of attorneys appointed to represent military commission defendants, including specific procedures for appellate defense counsel. Within the Office of the Chief Defense Counsel, all three of Mr. al Bahlul's counsel have multiple supervisory chains of command, including one that is exclusively concerned with the conduct of appeals. These chains of command exercise direct oversight regarding the scope of

[3] The separate regulatory authority for defense counsel furthers Congress' stated finding that effective representation by counsel is integral to fairness and effectiveness of the novel process it was creating. Military Commissions Act of 2009, Pub. L. 111-84 § 1807 (2009) ("It is it the sense of Congress that - the fairness and effectiveness of the military commissions system under chapter 47A of title 10, United States Code (as amended by section 1802), will depend to a significant degree on the adequacy of defense counsel and associated resources for individuals accused."); *accord Penson v. Ohio*, 488 U.S. 75, 84-85 (1988) ("The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage. Both stages of the prosecution, although perhaps involving unique legal skills, require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over."); *United States v. Palenius*, 2 M.J. 86, 92 (C.M.A. 1977) (stressing the unique importance of appellate defense counsel in the military justice system and placing a "heavy burden" on the government to demonstrate a waiver of counsel on appeal).

representation, are entitled to receive confidential attorney-client information, and are required to monitor compliance with the Rules of Professional Responsibility. REG. T. MIL. COMM. § 9-1(a) (2007). Supervisory authorities within the Office of the Chief Defense Counsel are, of course, aware of counsel's continued activity on behalf of Mr. Bahlul.

This detailed scheme for the appointment and supervision of counsel in military commission cases presents a marked contrast to the absence of any legislative or regulatory guidance for the administration of *habeas corpus* petitions filed by the Guantanamo detainees. As this Court is well aware, the District Courts have been forced to administer these *habeas* cases by *ad hoc* judicial order, such that the right to and responsibilities of counsel are largely governed by orders in the consolidated cases. *See In re Guantanamo Bay Detainee Litigation*, 577 F.Supp.2d 143, 157-58 (D.D.C. 2008) (requiring "Verification of Representation"). The procedures the District Courts have devised to administer the *habeas* actions are therefore inapposite to the elaborate legislative and regulatory scheme that governs this case.

Congress envisioned that appointed counsel would zealously advocate on a client's behalf and protect their rights as a criminal defendant. Absent a knowing, intelligent and voluntary waiver of those rights, including the right for direct

appeal to this Court, it would be unethical for counsel to sit on their hands.[4] *See, e.g., United States v. Guillen,* 561 F.3d 527, 529 (D.C. Cir. 2009) (to be effective, waiver of appellate rights must be "knowing, intelligent and voluntary"); *In re Sealed Case*, 527 F.3d 174, 175-176 (D.C. Cir. 2008) (counsel must protect a client's right to appeal and may not place the burden on the client to take affirmative steps); *see also United States v. Hernandez,* 33 M.J. 145, 148-149 (C.M.A. 1991) (the seminal military justice case on waiver of appellate rights, in which the C.M.A. required strict adherence to Congress' statutory scheme). The statutory scheme is clear and the government has offered no reason, let alone a legal basis, to impose additional burdens on Mr. Bahlul that Congress has not thought necessary or appropriate.[5]

---

[4] Government counsel rely primarily on *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), for the proposition that "an attorney, including appointed counsel, may not take the procedural step of noticing an appeal unless the client authorizes it." (Gov't Mot. at 12). *Flores-Ortega*, however, neither says nor implies this. All *Flores-Ortega* held was that when a defendant pleads guilty, it is not *per se* ineffective assistance of counsel if an attorney fails to file an appeal when the client has not expressed an opinion. The obvious implication of the Court's holding was that missing a filing deadline very well may be ineffective assistance. It is just not *per se* ineffective assistance. Because of differences between the civilian and military justice systems however, a *per se* rule may exist for military appeals. *See United States v. Byrd*, 53 M.J. 53 (C.A.A.F. 2000) ("This Court has inferred that Congress did not wish to have an accused's effort to appeal thwarted by the omissions, indifference or ineptitude of the military counsel provided to him.") (*quoting United States v. Ortiz,* 24 M.J. 323, 324 (C.M.A. 1987) *abrogated on other grounds by United States v. Rodriguez,* 67 M.J. 110 (C.A.A.F. 2009)).

[5] Tellingly, this additional burden to affirmatively "demonstrate authority to pursue the appeal" is not one that government counsel has sought to impose on appellate

## II. The Motion should be Denied because the Government has Failed to Present Substantial Proof that Counsel Lack the Authority to Proceed.

The government does not dispute that the undersigned counsel were properly appointed, nor does it dispute that they have an ongoing attorney-client relationship with Mr. Bahlul. Instead, the government's asserted concern is that it "has strong reason to believe that petitioner [Mr. Bahlul] . . .has, in fact, instructed Mr. Paradis not to prosecute an appeal on his behalf." (Gov't Mot. at 1).

The government's heavy reliance on Guantanamo *habeas* cases to justify its inquiry is inappropriate. The existence of a continuing attorney-client relationship between Mr. Bahlul and his counsel distinguishes this case in a manner that should be dispositive. None of those *habeas* cases involved existing attorney-client relationships. They involved attorneys attempting to initiate civil actions as or on behalf of a "next friend." Counsel here do not claim to be Mr. Bahlul's next friend.

Mr. Bahlul is a criminal defendant and his counsel were appointed to represent him as such. They were appointed by the Chief Defense Counsel, who remains their supervisory authority and continues to oversee the conduct of this appeal with benefit of confidential attorney-client information. Decisions of the Chief Defense Counsel carry as a matter of law and warrant as a matter of fact a

---

counsel in the related case of *Hamdan v. United States*, Case No. 11-1257, filed on July 11, 2011. The Petitioner there returned to Yemen long ago. The only difference between the circumstances of the appeals filed by Mr. Hamdan and Mr. Bahlul is that the government exerts physical control over Mr. Bahlul.

"presumption of regularity." "[I]n the absence of clear evidence to the contrary" this Court should presume he has "properly discharged [his] official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (U.S. Attorney's prosecutorial discretion carries same "presumption of regularity" due all government agencies) (quoting *United States* v. *Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)). *See also U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("a presumption of regularity attaches to the actions of government agencies").

Government counsel have not alleged any facts or produced any evidence, let alone "clear evidence", to overcome that presumption of regularity. And absent clear evidence that the Chief Defense Counsel has failed in his duties, or that the formal procedures and policies his office has in place are inadequate, this Court should reject the government's invitation to second-guess the due diligence exercised by the Chief Defense Counsel, supervisory attorneys in the Office of the Chief Defense Counsel or the undersigned counsel.

In their motion, counsel for the government correctly cite to this Court's decision in *Communist Party of the U.S.A. v. Commissioner*, 332 F.2d 325, 328-29 (D.C. Cir. 1964), for the "ancient" legal proposition that an attorney is presumed to have the authority to proceed. (Gov't Mot. at 13). That case also lays out the standard for overcoming that presumption. "[A] party challenging the authority of an attorney at law 'must present substantial proof in the form of countervailing

evidence that authority is lacking, in order to justify, on that ground, an order to strike a pleading from the files.'" *Id*. at 328 (quoting *Booth v. Fletcher*, 101 F.2d 676, 683 (D.C. Cir. 1938) *cert. den'd* 307 U.S. 628 (1939)).[6]

While Mr. Bahlul's statements reflect hostility toward the military commissions system that convicted him, his sentiments are hardly unusual, nor particularly significant. Hostility to the criminal justice system is not uncommon among even the most run-of-the-mill defendants. To be sure, if a client's open hostility to the criminal justice system were the test for determining whether counsel lacked authority, this country's courts would see fewer criminal appeals. Far from substantial proof, the fragmented post-conviction exchanges it relies upon fall well short of what this Court required in civil cases, let alone what Congress has required to terminate a criminal appeal.

---

[6] Government counsel do not appear to acknowledge this Court's "substantial proof" standard or explain how they have met it. Instead, they implicitly offer an alternative standard from the Tenth Circuit, whereby "Although the party seeking to rebut the presumption has the burden of proving that the attorney acted without authorization, . . . the burden . . . is not severe." *F.D.I.C. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992) (as quoted in Gov't Mot. at 13). But their quotation should not be taken at face value. Their second ellipses omit the three words "in this Circuit," so that the actual quotation reads, "the burden in this Circuit is not severe." Government counsel fail to note that the Tenth Circuit implicitly acknowledged that it takes a minority view, specifically contrasting its own view with that of the Fourth Circuit, which like this Court's, makes the presumption a "strong one" overcome only by "clear and convincing" evidence. *Id*. (*quoting Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 45-46 (4th Cir.1968)).

The government nevertheless wishes the Court to undertake an invasive fact-finding expedition into what they concede to be an ongoing attorney-client relationship between a criminal defendant and the lawyers that Congress has required represent him. And they argue that injecting themselves into the most sensitive areas of Mr. Bahlul's legal representation is warranted because of a handful of statements selected from the nearly eight years during which his case has been pending; statements that neither gave the government cause for concern before now nor withstand the weight placed upon them when viewed in context. Indeed, they ask this Court to do so despite Mr. Bahlul's refusal to execute documents that would waive his appellate rights, even when they handed them to him just last month. (*See* Gov't Mot. at Attachment C ¶ 3). Other than its speculation about Mr. Bahlul's genuine desires, the government has offered this Court no basis, let alone "substantial proof," to second-guess counsel's authority.

## III. The Appropriate Remedy for the Government's Complained of Error is a Writ of Error *Coram Nobis* to Vacate the Judgment Below along with an Order to Render Mr. Bahlul's Conviction Final as of May 2009.

In its motion, the government seeks the wrong remedy for its claimed error. Appellant has neither waived nor withdrawn his appeal, and counsel continue to act under the informed, good faith belief that they are effectuating Mr. Bahlul's desires and their statutory obligation to protect his rights. Assuming *arguendo*, however, that this Court ultimately holds otherwise, the proper remedy for the

government's claimed error is not the dismissal of his petition to this Court. It is a writ of error *coram nobis* to vacate the CMCR's judgment pursuant to this Court's supervisory jurisdiction over military commissions, along with an order that Mr. Bahlul's case be finalized as of the Convening Authority's action in May 2009.

If appointed counsel are without authority to act now, then they never had authority to act. The government has offered this Court no evidence that Mr. Bahlul's wishes have changed. Indeed, it predicates its motion on inferences that are almost exclusively drawn from conduct that predated — by years — the CMCR's decision and the docketing of this appeal. If Mr. Bahlul genuinely does not want his appeal to proceed now, he never did. The Chief Defense Counsel misevaluated the facts when he erroneously appointed counsel. Once appointed, counsel should have moved to withdraw his appeal as soon as the case was taken up by the CMCR. And counsel for the government should have moved to dismiss this appeal when it was before the CMCR.

If the government is now correct, then all parties involved in this case have been operating under a material mistake of fact from the outset. The proper remedy is a writ of error *coram nobis* to correct this mistake of fact, "which had not been put in issue and passed upon, and were material to the validity and regularity of the legal proceeding itself." *United States v. Mayer*, 235 U.S. 55, 68 (1914); *see also Farnsworth v. United States*, 232 F.2d 59 (D.C. Cir 1956); *United States v. Jones*,

2008 WL 783542 (W.D.La. 2008) ("So, it has been held that the writ [of error *coram nobis*] lies to vacate or correct judgments obtained . . . upon unauthorized appearance of counsel.").

**CONCLUSION**

The fact that the government did not seek to dismiss the appeal below nor seeks this particular remedy now raises questions as to the confidence that this Court should have in accepting what it has offered. As is clear from the government's own proof, Mr. Bahlul knows how to terminate his appeal if he so desires and has declined every opportunity to do so. Moving forward, if the undersigned counsel come to believe that Mr. Bahlul wishes to forfeit his appellate rights, counsel will obviously raise that fact with this Court. Since this has not happened, this Court should deny the government's motion so that Mr. Bahlul can achieve finality in the determination of his rights without further delay.

The motion should be denied.

Respectfully submitted,

/s/ Mary R. McCormick
Michel Paradis
CAPT Mary McCormick, JAGC, U.S. Navy
MAJ Todd E. Pierce, JA, U.S. Army
1620 Defense Pentagon
Washington, DC 20301-1620
michel.paradis@osd.mil
TEL: 1.703.696.9490 x115
FAX: 1.703.696.9575
*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2011 a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: November 17, 2011

Respectfully submitted,

/s/ Mary R. McCormick
Michel Paradis
CAPT Mary McCormick, JAGC, U.S. Navy
MAJ Todd E. Pierce, JA, U.S. Army
1620 Defense Pentagon
Washington, DC 20301-1620
michel.paradis@osd.mil
TEL: 1.703.696.9490 x115
FAX: 1.703.696.9575
*Counsel for Petitioner*