No. 11-1324

**ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 30, 2013**
_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

**ALI HAMZA SULIMAN AHMAD AL BAHLUL**

*Petitioner*,

**v.**

**UNITED STATES OF AMERICA**

*Respondent*.
_____

**ON APPEAL FROM THE
COURT OF MILITARY COMMISSION REVIEW (CMCR-09-001)**
_____

**BRIEF OF *AMICI CURIAE*
INTERNATIONAL LAW SCHOLARS
IN SUPPORT OF PETITIONER ON *EN BANC* REVIEW**
_____

William J. Aceves                David Weissbrodt
California Western School of Law  University of Minnesota Law School
225 Cedar Street                 229 19th Ave. South
San Diego, CA  92101             Minneapolis, MN 55455
Tel (619) 525-1413               Tel (612) 625-5027
Fax (619) 615-1413               weiss001@umn.edu
wja@cwsl.edu
*Counsel of Record*

Counsel for *Amici Curiae*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel of record certifies as follows:

## I. PARTIES AND *AMICI* APPEARING BELOW

The parties and *amici* who appeared before the Court of Military Commission Review in connection with this appeal were:

1. Ali Hamza Suliman Ahmad al Bahlul, *Appellant*

2. United States of America, *Appellee*

3. *Amicus Curiae* the Office of the Chief Defense Counsel

4. *Amicus Curiae* Robert David Steele and Others in the United States Intelligence Community

5. *Amicus Curiae* Historians, Political Scientists and Constitutional Law Professors

6. *Amicus Curiae* National Institute of Military Justice

7. *Amicus Curiae* Montana Pardon Project

8. *Amicus Curiae* Human Rights Committee of the American Branch of the International Law Association

## II. RULINGS UNDER REVIEW

This case is on appeal from a decision of the United States Court of Military Commission Review in *United States v. Ali Hamza Ahmad Suliman al Bahlul,*

CMCR 09-001(en *banc* September 9, 2011) and which is reported at *United States v. al Bahlul*, 820 F.Supp.2d 1141 (C.M.C.R. 2011).

## III. RELATED CASES

This case has not been previously filed with this court or any other court. Counsel are unaware of any other related cases. However, the issues briefed in this case are related to this Court's decision in *Hamdan v. United States,* 696 F.3d 1238 (D.C. Cir. 2012).

Dated:      June 10, 2013                    Respectfully submitted

                                             /s/ William J. Aceves

                                             William J. Aceves
                                             California Western School of Law
                                             225 Cedar Street
                                             San Diego, CA 92101
                                             (619) 525-1413
                                             wja@cwsl.edu

                                             Counsel for *Amici Curiae*

iii

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ ii

TABLE OF CONTENTS ............................................................................... iv

TABLE OF AUTHORITIES ........................................................................ v

GLOSSARY OF ABBREVIATIONS ....................................................... xi

STATUTES AND REGULATIONS ...................................................... xii

INTEREST OF *AMICI CURIAE* ............................................................. 1

STATEMENT OF AUTHORSHIP AND FINANCIAL INTEREST ...................... 2

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ............................................................................................ 3

      I.     CONSPIRACY IS NOT AN OFFENSE AGAINST THE LAW OF WAR ...................................................................................... 5

      II.    THE CRIME OF CONSPIRACY IS INAPPROPRIATE WITHIN THE LAW OF ARMED CONFLICT ................................ 15

CONCLUSION ...................................................................................... 19

APPENDIX ............................................................................................ 21

CERTIFICATE OF COMPLIANCE ..................................................... 28

CERTIFICATE OF SERVICE ............................................................... 29

# TABLE OF AUTHORITIES[1]

## UNITED STATES CASES

*Ex parte Quirin*,
　　317 U.S. 1 (1942).........................................................................3

*Glasser v. United States*,
　　315 U.S. 60 (1942).......................................................................16

*\*Hamdan v. Rumsfeld*,
　　548 U.S. 557 (2006).....................................................................3

*Hamdan v. United States*,
　　696 F.3d 1238 (D.C. Cir. 2012)...................................................4

*In re Yamashita*,
　　327 U.S. 1 (1946)......................................................................3, 4

*The Nereide*,
　　13 U.S. (9 Cranch) 388 (1815) ....................................................4

*United States v. Saglietto*,
　　41 F. Supp. 21 (E.D.Va. 1941) ...................................................16

*United States v. Smith*,
　　18 U.S. (5 Wheat.) 153 (1820) .....................................................4

## INTERNATIONAL CRIMINAL TRIBUNAL CASES

International Military Tribunal, Judgment, *in International Military Tribunal for
　　the Far East* (1948).......................................................................8

*15 Law Reports of the Trials of War Criminals* (1950)...........................8

---

[1] Authorities upon which *amici* chiefly rely are marked with asterisks (\*).

*15 Trials of War Criminals Before the Nuernberg Military Tribunals Under*
        *Control Council Law No. 10* (1949) ............................................................7, 8

*Prosecutor v. Musema*,
        Case No. ICTR-96-13-T, Judgment, (Jan. 27, 2000) ....................................12

*Prosecutor v. Milutinovic*,
        Decision on Dragoljub Ojdanic's Motion Challenging Jurisdiction
        – Joint Criminal Enterprise, Case No. IT-99-37-AR72,
        Appeal Judgment, (May 21, 2003) ............................................................9, 10

*Prosecutor v. Milutinovic*,
        Case No. IT-99-37-AR72, Separate Opinion of Judge David Hunt on
        Challenge by Ojdanic to Jurisdiction-Joint Criminal Enterprise, Appeal
        Judgment, (May 21, 2003) ............................................................................10

*Prosecutor v. Tadic*,
        Case No. IT-94-1-A, Judgment, (July 15, 1999) .............................................9

*Rwamakuba v. Prosecutor*,
        Case No. ICTR-98-44-AR72.4, Decision on Interlocutory Appeal
        Regarding Application of Joint Criminal Enterprise to the Crime of
        Genocide, (Oct. 22, 2004) .............................................................................9

*United States v. Alstoetter*,
        3 *Trials of War Criminals Before the Nuernberg Military Tribunals
        Under Control Council Law No. 10* (1949) ....................................................8

*United States v. Goering*,
        22 *Trials of the Major War Criminals Before the Int'l Military
        Tribunal* 411 (1948) .......................................................................................7

**UNITED STATES STATUTES**

*Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006)
        (codified as amended at 10 U.S.C. § 950t (2010)) ..........................................3

## TREATIES, CONVENTIONS, AND RESOLUTIONS

Convention Respecting the Laws and Customs of War on Land,
Oct. 18, 1907, 36 Stat. 2277, 1 Bevans 631 ..................................................6

Convention with Respect to the Laws and Customs of War on Land,
July 29, 1899, 32 Stat. 1803, 1 Bevans 247 ..................................................6

Geneva Convention for the Amelioration of the Condition of the Wounded
and Sick in Armed Forces in the Field, Aug. 12, 1949,
6 U.S.T. 3114, 75 U.N.T.S. 31 .........................................................4

Geneva Convention for the Amelioration of the Condition of Wounded,
Sick and Shipwrecked Members of Armed Forced at Sea,
Aug. 12, 1949, 6 U.S.T. 3217, 75 U.N.T.S. 85 ...............................5

Geneva Convention Relative to the Treatment of Prisoners of War,
Aug. 12, 1949, 6 U.S.T. 3316; 75 U.N.T.S. 135 .............................5

Geneva Convention Relative to the Protection of Civilian Persons in
Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287 .....................5

Protocol Additional to the Geneva Conventions of 12 August 1949,
and Relating to the Protection of Victims of International Armed
Conflicts, June 8, 1977, 1125 U.N.T.S. 3..........................................6

Protocol Additional to the Geneva Conventions of 12 August 1949, and
Relating to the Protection of Victims of Non-International
Armed Conflicts, June 8, 1977, 1125 U.N.T.S. 609 ......................................6

Rome Statute of the International Criminal Court,
37 I.L.M. 1002, 2187 U.N.T.S. 90 (1998)....................................................13

Statute of the International Court of Justice,
June 26, 1945, 59 Stat. 1055, 3 Bevans 1179..................................4

Statute of the International Criminal Tribunal for the Former
Yugoslavia, May 25, 1993, 32 I.L.M. 1192 ..................................................13

Statute of the International Criminal Tribunal for Rwanda,
    Nov. 8, 1994, 33 I.L.M. 1598 ......................................................................12

U.N. Convention for the Suppression of Terrorist Bombings,
    Dec. 15, 1997, 2149 U.N.T.S. 256 ...............................................................11

## BOOKS AND ARTICLES

Antonio Cassese, *Genocide*, in *The Rome Statute of the International
    Criminal Court: A Commentary* 335 (Cassese, Gaeta & Jones eds. 2002)...14

Roger S. Clark, *The Military Commissions Act of 2006: An Abject Abdication
    by Congress*, 6 Rutgers J.L. & Pub. Pol'y. 78 (2008) ...................................14

David Cole, *Out of the Shadows: Preventive Detention, Suspected Terrorist
    and War*, 97 Cal. L. Rev. 693 (2009) ...........................................................16

Allison Marston Danner & Jenny S. Martinez, *Guilty Associations: Joint
    Criminal Enterprise, Command Responsibility and the Development
    of International Criminal Law*, 93 Cal. L. Rev. 75 (2005) ...........................10

Mark A. Drumbl, *The Expressive Value of Prosecuting and Punishing
    Terrorists:* Hamdan*, the Geneva Conventions, and International
    Criminal Law*, 75 Geo. Wash. L. Rev. 1165(2007) .....................................10

David B. Filvaroff, *Conspiracy and the First Amendment*,
    121 U. Pa. L. Rev. 189 (1972).......................................................................15

George P. Fletcher, *Hamdan Confronts the Military Commissions Act of
    2006*, 45 Colum. J. Transnat'l L. 427 (2007) ................................................14

George P. Fletcher, *The Storrs Lectures: Liberals and Romantics at War:
    The Problem of Collective Guilt*, 111 Yale L.J. 1499 (2002) .......................17

Richard Goldstone, *Justice as a Tool for Peace-Making: Truth Commissions
    and International Criminal Tribunals*, 28 N.Y.U. J. Int'l L. & Pol. 485
    (1996)..............................................................................................................17

*The International Criminal Court: The Making of the Rome Statute*
        (Roy S. Lee ed., 1999) .................................................................................11

Neal Katyal, *Gitmo' Better Blues,* Slate (Mar. 19, 2004),
        http://www.slate.com/id/2097397 ...............................................................17

Major Joseph A. Keeler, *Genocide: Prevention Through Nonmilitary
        Measures*, 171 Mil. L. Rev. 135 (2002) ........................................................13

Mark Lattimer & Philippe Sands, *Justice for Crimes Against Humanity* (2003)....11

Lucy Martinez, *Prosecuting Terrorists at the International Criminal Court:
        Possibilities and Problems*, 34 Rutgers L.J. 1 (2002) ...................................13

Patrick M. Norton, *A Law of the Future or a Law of the Past? Modern
        Tribunals and the International Law of Expropriation*,
        85 Am. J. Int'l L. 474 (1991)..........................................................................4

Note, *Developments in the Law: Criminal Conspiracy,* 72 Harv. L. Rev. 920
        (1959)..............................................................................................................16

Jens David Ohlin¸ *Incitement and Conspiracy to Commit Genocide*, in The
        *U.N. Genocide Convention: A Commentary* 186 (Paola Gaeta ed., 2009) ...12

Benjamin E. Rosenberg, *Several Problems in Criminal Conspiracy Laws and
        Some Proposals for Reform*, 43 Crim. L. Bull. 427 (2007) ..........................15

Leila Nadya Sadat, *The International Criminal Court and the Transformation
        of International Law: Justice for the New Millennium* (2002)......................11

David Scheffer, *Why Hamdan is Right about Conspiracy Liability*,
        Jurist (Mar. 30, 2006), http://jurist.law.pitt.edu/forumy/2006/03/why-
        hamdan-is-right-about-conspiracy.php...........................................................18

Bradley F. Smith, *Reaching Judgment at Nuremberg* (1977) ...................................7

Telford Taylor, *Anatomy of the Nuremberg Trials: A Personal Memoir* (1992)......7

Telford Taylor, *Nuremberg and Vietnam: An American Tragedy* 19 (1970)..........18

Detlev F. Vagts, *Military Commissions: A Concise History*,
101 Am. J. Int'l L. 35 (2007)..........................................................................3

Raha Wala, Note, *From Guantánamo to Nuremberg and Back: An Analysis
of Conspiracy to Commit War Crimes Under International Humanitarian
Law*, 41 Geo J. Int'l L. 683 (2009) .............................................................11

Patricia M. Wald, *To "Establish Incredible Events by Credible Evidence":
The Use of Affidavit Testimony in Yugoslavia War Crimes Tribunal
Proceedings*, 42 Harv. Int'l L.J. 535 (2001)...................................................16

Michael Walzer, *Just and Unjust Wars* (1977)..........................................................18

William Winthrop, *Military Law and Precedents* (2d ed. 1920)............................18

## MISCELLANEOUS MATERIALS

Robert H. Jackson, *Report of United States Representative to the International
Conference on Military Trials* 296 (1945) ......................................................6

Telford Taylor, *Final Report to the Secretary of the Army on the Nuernberg Trials
Under Control Council Law No. 10* (1949)....................................................8

*Legal Issues Regarding Military Commissions and the Trial of Detainees for
Violations of the Law of War: Hearing Before S. Comm. on Armed Services*,
111th Cong. 12 (July 7, 2009) .......................................................................3

x

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| First Geneva Convention | Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field |
| Fourth Geneva Convention | Geneva Convention Relative to the Protection of Civilian Persons in Time of War |
| Genocide Convention | Convention on the Prevention and Punishment of the Crime of Genocide |
| Hague Convention | Convention Respecting the Laws and Customs of War on Land |
| ICC | International Criminal Court |
| ICTR | International Criminal Tribunal for Rwanda |
| ICTY | International Criminal Tribunal for the former Yugoslavia |
| IMT | International Military Tribunal at Nuremburg |
| IMTFE | International Military Tribunal for the Far East |
| JCE | Joint Criminal Enterprise |
| London Charter | Charter of the International Military Tribunal at Nuremburg |
| MCA | Military Commissions Act |
| Second Geneva Convention | Geneva Convention for the Amelioration of the Condition of Wounded, Sick and Shipwrecked Members of Armed Forces at Sea |
| Third Geneva Convention | Geneva Convention Relative to the Treatment of Prisoners of War |

xi

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in the *En Banc* Brief for Petitioner.

## INTEREST OF *AMICI CURIAE*

This Brief of *Amici Curiae* International Law Scholars is respectfully submitted pursuant to Federal Rule of Appellate Procedure 29 and this Court's order of April 23, 2013.  It is filed in support of Petitioner and seeks reversal of the decision by the Court of Military Commission Review.

*Amici* are legal experts in the fields of international humanitarian law, international criminal law, and human rights.[2]  While they pursue a wide variety of legal interests, they all share a deep commitment to the rule of law and respect for human rights.  *Amici* believe this case raises important issues concerning international humanitarian law and international criminal law.  Based on their scholarship and expertise, they conclude that the charge of conspiracy is not a violation of the law of war.  Accordingly, *Amici* would like to provide this Court with an additional perspective on this issue.  They believe this submission will assist the Court in its deliberations.[3]  All parties have consented to the participation of *amici curiae* in this case.

---

[2] A list of the *Amici* appear in the Appendix.

[3] Pursuant to Circuit Rule 29(d), *Amici* certify that it is not practicable to join all other *amici* in this case in a single brief. We do not claim expertise in the issues that may be addressed by other *amici,* and we believe it would be inappropriate to address matters upon which we do not have particular expertise.

1

## STATEMENT OF AUTHORSHIP AND FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 29(c)(5), *Amici* certify that this brief was authored by *Amici* and counsel listed on the front cover. No party or party's counsel authored this brief, in whole or in part. No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief. No other person but *Amici* and their counsel contributed money that was intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Military commissions may only try offenses against the law of war. Whether conspiracy is an offense against the law of war is a question of international law. The primary sources of international law, including customary international law, treaties and proceedings from various international criminal tribunals, demonstrate that conspiracy is not, and has never been, a violation of the law of war. Hence, this judgment must be set aside.

The crime of conspiracy is unique to Anglo-American law. It is absent from all major law of war treaties, including the Geneva and Hague Conventions, and it has been rejected in the proceedings of international criminal tribunals. International humanitarian law has rejected the crime of conspiracy for substantial reasons. The charge is overbroad. It is easy to charge but difficult to defend, and it

can serve to assign criminal liability to persons who are not responsible for committing war crimes. Further, the realities of armed conflict cannot practically permit the application of the crime of conspiracy to participants in armed conflict.

## ARGUMENT

Because military commissions are explicitly limited to the trial of recognized offenses against the law of war, the military commission may not prosecute the crime of conspiracy. The Supreme Court, in *Hamdan v. Rumsfeld*, 548 U.S. 557, 596 n.27 (2006) (plurality opinion) explicitly recognized that "commissions convened during time of war but under neither martial law nor military government may try only offenses against the laws of war."[4] The Executive Branch concurs: "[t]he President has made clear that military commissions are to be used only to prosecute law of war offenses." *Legal Issues Regarding Military Commissions and the Trial of Detainees for Violations of the Law of War: Hearing Before S. Comm. on Armed Services*, 111th Cong. 12 (July 7, 2009) (Submitted statement of David

---

[4] *See also Ex parte Quirin*, 317 U.S. 1, 30 (1942) ("Congress has incorporated by reference, as within the jurisdiction of military commissions, all offenses which are defined as such by the law of war, and which may constitutionally be included within that jurisdiction.") (internal citation omitted); *In re Yamashita*, 327 U.S. 1, 7-8 (1946). The *Quirin* Court explicitly declined to decide the constitutionality of any charges beyond law of war violations. 317 U.S. at 46. *See generally* Detlev F. Vagts, *Military Commissions: A Concise History*, 101 Am. J. Int'l L. 35, 36-37 (2007) ("[MCA military commissions] find their substantive rules in international law.")

Kris, Assistant Attorney General). Whether an offense violates the law of war turns on international law. *Hamdan v. United States*, 696 F.3d 1238, 1250 (D.C. Cir. 2012); *In re Yamashita*, 327 U.S. 1, 7 (1946); *cf. The Nereide*, 13 U.S. (9 Cranch) 388, 418 (1815).

The most authoritative recitation of the sources of international law is article 38(1) of the Statute of International Court of Justice. *See* Patrick M. Norton, *A Law of the Future or a Law of the Past? Modern Tribunals and the International Law of Expropriation*, 85 Am. J. Int'l L. 474, 497 (1991). It states that international law derives from conventions and treaties, international customary law, and general principles of law recognized by civilized nations, and may be identified through "judicial decisions and the teachings of the most highly qualified publicists of the various nations." Statute of the International Court of Justice, art. 38(1), June 26, 1945, 59 Stat. 1055, 3 Bevans 1179. The Supreme Court has long recognized the same sources. *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 160-61 (1820) ("the law of nations . . . may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law."). These principal sources of international law consistently show that the crime of conspiracy is not an offense against the law of war.

4

# I.   CONSPIRACY IS NOT AN OFFENSE AGAINST THE LAW OF WAR.

The Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, 120 Stat. 2600, 2630 (2006) (codified as amended at 10 U.S.C. § 950t(29) (2010)), states that a person who "conspires to commit one or more substantive offenses triable by military commission" may be punished for the crime of "conspiracy." The crime of conspiracy, as defined by the MCA, is an inchoate offense that does not function as a theory of liability for other substantive crimes. So-defined, the crime does not appear in any of the major treaties governing the methods and means of warfare, and it has never been recognized by any international military tribunal. Rather, the international community has specifically, and repeatedly, rejected conspiracy as an offense against the law of war.

The four Geneva Conventions and two additional protocols do not recognize the offense of conspiracy:

> • Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field, Aug. 12, 1949, 6 U.S.T. 3114, 75 U.N.T.S. 31[hereinafter First Geneva Convention];

> • Geneva Convention for the Amelioration of the Condition of Wounded, Sick and Shipwrecked Members of Armed Forces at Sea, Aug. 12, 1949, 6 U.S.T. 3217, 75 U.N.T.S. 85 [hereinafter Second Geneva Convention];

> • Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135 [hereinafter Third Geneva Convention].

> • Geneva Convention Relative to the Protection of Civilian Persons in Time

5

of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287 [hereinafter Fourth Geneva Convention].

• Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflicts, art. 48 June 8, 1977, 1125 U.N.T.S. 3 [hereinafter Protocol I].

• Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of Non-International Armed Conflicts, June 8, 1977, 1125 U.N.T.S. 609 [hereinafter Protocol II].

The four Geneva Conventions provide a thorough list of actions that represent "grave breaches" against the law of war. First Geneva Convention, art. 50; Second Geneva Convention, art. 51; Third Geneva Convention, art. 130; Fourth Geneva Convention, art. 147. Nowhere in any of these conventions does the concept, let alone the crime, of conspiracy to commit such acts appear. Neither does conspiracy appear in the Hague Conventions of 1899 and 1907 – two early and significant official statements of the law of war. *See* Convention Respecting the Laws and Customs of War on Land, Oct. 18, 1907, 36 Stat. 2277, 1 Bevans 631; Convention with Respect to the Laws and Customs of War on Land, July 29, 1899, 32 Stat. 1803, 1 Bevans 247.

In establishing the Nuremburg trials, the international community also rejected inclusion of conspiracy as a war crime. In those deliberations, André Gros of the French delegation explained that the French system does not recognize conspiracy as it is found in Anglo-Saxon law. *See* Robert H. Jackson, *Report of United States Representative to the International Conference on Military Trials*

296 (1945). Professor Gros believed that importing conspiracy into international humanitarian law would inappropriately extend liability to innocent actors: "When you say that a state which launches a war has committed a crime, you do not imply that the members of that state are criminals." *Id*. at 297. For these reasons, the drafters determined that the crime of conspiracy "was too vague and so unfamiliar . . . that it would lead to endless confusion." Bradley F. Smith, *Reaching Judgment at Nuremberg* 51 (1977).

The judgment of the International Military Tribunal at Nuremburg (IMT) explicitly declined to recognize the inchoate crime of conspiracy to commit war crimes as a discreet substantive offense. *See United States. v. Goering*, 22 *Trials of the Major War Criminals Before the International Military Tribunal* 411, 469 (1948). The tribunal explained that the London Charter did "not add a new and separate crime" of conspiracy to commit war crimes and crimes against humanity. *Id*. Underlying the tribunal's rejection of inchoate conspiracy for war crimes was concern that an "overbroad application of the conspiracy principle may drag innocent people into the prosecution's net." Telford Taylor, *Anatomy of the Nuremberg Trials: A Personal Memoir* 553 (1992).

The criminal tribunals conducted by the Allied Powers under Control Council Law No. 10 also refused to treat conspiracy as a violation against the law of war. *See* 15 *Trials of War Criminals Before the Nuernberg Military Tribunals*

7

*Under Control Council Law No. 10*, at 1077-1100 (1949). The tribunals ruled that they had "no jurisdiction to try any defendant upon a charge of conspiracy considered as a separate substantive offense." *United States v. Alstoetter*, 3 *Trials of War Criminals Before the Nuernberg Military Tribunals Under Control Council Law No. 10*, at 956 (1949). Under Control Council Law No. 10 "no defendant was convicted of conspiracy." Telford Taylor, *Final Report to the Secretary of the Army on the Nuernberg Trials Under Control Council Law No. 10*, at 92 (1949). The U.N. War Crimes Commission similarly noted that the United States Military Tribunals did "not recognise[] as a separate offence conspiracy to commit war crimes or crimes against humanity." 15 *Law Reports of the Trials of War Criminals* 90 (1949).

In addition, the Charter for the International Military Tribunal for the Far East (IMTFE), the tribunal responsible for prosecuting members of the Japanese government after World War II, did not "confer any jurisdiction in respect of a conspiracy to commit any crime other than a crime against peace." *See* International Military Tribunal, Judgment, *in International Military Tribunal for the Far East* 48, 413, 449-51 (1948).

The international community has expressly rejected conspiracy as a war crime in more recent instruments. The statutes establishing the International Criminal Tribunal for the former Yugoslavia (ICTY) and the International Criminal

8

Tribunal of Rwanda (ICTR) contain no recognition of the crime of conspiracy in relation to war crimes or crimes against humanity. Prosecutions in these tribunals have instead focused on "joint criminal enterprise" (JCE) liability. JCE liability is not the same as conspiracy. The ICTY has expressly recognized that "criminal liability pursuant to a joint criminal enterprise is not a liability for . . . conspiring to commit crimes." *Prosecutor v. Milutinovic*, Case No. IT-99-37- AR72, Decision on Dragoljub Ojdanic's Motion Challenging Jurisdiction – Joint Criminal Enterprise, Appeal Judgment, ¶ 26, (May 21, 2003). Unlike conspiracy, JCE liability is not a stand-alone inchoate crime and "does not create a separate crime of participating through the means identified in that doctrine." *Rwamakuba v. Prosecutor*, Case No. ICTR-98-44-AR72.4, Decision on Interlocutory Appeal Regarding Application of Joint Criminal Enterprise to the Crime of Genocide, ¶ 30 (Oct. 22, 2004). Instead, JCE liability arises when a substantive war crime – such as willful killing or torture – is committed pursuant to a common plan or scheme, and the perpetrator of the underlying crime has the intent to execute that scheme. *See Prosecutor v. Tadic*, Case No. IT-94-1-A, Judgment, ¶ 189-90 (July 15, 1999).

Hence, joint criminal enterprise is different from conspiracy. In conspiracy, the agreement itself constitutes the essence of the crime, and prosecutors need only demonstrate this agreement to secure a conviction. *See, e.g.*, Model Penal Code §5.03(1)(a) (explaining that a person is guilty of conspiracy if he "agrees with such

other person or persons that they or one or more of them will engage in conduct that constitutes such crime"). By contrast, "the liability of a member of a joint criminal enterprise will depend on the commission of criminal acts in furtherance of that enterprise," – proof of a "mere agreement" is not sufficient. *Prosecutor v. Milutinovic*, Case No. IT-99-37-AR72, Appeal Judgment, Decision on Dragoljub Ojdanic's Motion Challenging Jurisdiction – Joint Criminal Enterprise, ¶ 23, (May 21, 2003). The idea that joint criminal enterprise is a form of conspiracy is "entirely fallacious." Allison Marston Danner & Jenny S. Martinez, *Guilty Associations: Joint Criminal Enterprise, Command Responsibility, and the Development of International Criminal Law*, 93 Cal. L. Rev. 75, 119 (2005) (quoting *Prosecutor v. Milutinovic*, Case No. IT-99-37-AR72, Separate Opinion of Judge David Hunt on Challenge by Ojdanic to Jurisdiction-Joint Criminal Enterprise, Appeal Judgment, ¶ 23, (May 21, 2003)). The plurality in *Hamdan v. Rumsfeld* also distinguished between "liability theories such as joint criminal enterprise, which are recognized by international law, from stand-alone crimes such as . . . conspiracy." Mark A. Drumbl, *The Expressive Value of Prosecuting and Punishing Terrorists:* Hamdan*, the Geneva Conventions, and International Criminal Law*, 75 Geo. Wash. L. Rev. 1165, 1172, 1174 (2007).[5]

---

[5] Conspiracy-based vicarious liability is not directly at issue in this appeal because it was not established in the statutory language of the MCA of 2006 nor was it laid out in the charge sheet against the Petitioner. Nonetheless, it is worth noting that

The Rome Statute of 1998, which established the International Criminal Court (ICC), also refused to adopt conspiracy as a war crime. The drafters of the ICC Statute sought to codify the existing principles of international law. *See The International Criminal Court: The Making of the Rome Statute* 30-31 (Roy S. Lee ed., 1999). In doing so, the drafters recognized that previous international agreements did not criminalize conspiracy and reaffirmed that international consensus. *See id.* at 199-200 (noting that the Rome Statute drafters adopted the language of the 1997 U.N. Convention for the Suppression of Terrorist Bombings, Dec. 15, 1997, 2149 U.N.T.S. 256, which does not include the crime of conspiracy).

Prominent scholars recognize that the Rome Statute "provides the most comprehensive, definitive and authoritative list of war crimes and crimes against humanity attracting individual criminal liability." Mark Lattimer & Philippe Sands, *Justice for Crimes Against Humanity* 5 (2003). The drafting process was a "quasi-legislative event that produced a criminal code for the world." Leila Nadya Sadat, *The International Criminal Court and the Transformation of International Law:*

---

international humanitarian law has rejected conspiracy-based vicarious liability for many of the same reasons that it has rejected the inchoate crime of conspiracy. *See* Raha Wala, Note, *From Guantánamo to Nuremberg and Back: An Analysis of Conspiracy to Commit War Crimes Under International Humanitarian Law*, 41 Geo J. Int'l L. 683, 705 (2011).

*Justice for the New Millennium* 263 (2002). In this light, the contents of the Rome Statute provide particular insight into what crimes constitute offenses against the law of nations.

It is instructive to consider how conspiracy has been addressed in the context of the crime of genocide.  The drafters of the Genocide Convention included the crime of conspiracy because "genocide was horrendous enough that conspiracy to commit it was sufficiently disruptive to the international system." Jens David Ohlin¸ *Incitement and Conspiracy to Commit Genocide*, *in The U.N. Genocide Convention: A Commentary* 186, 192 (Paola Gaeta ed., 2009). Likewise, the ICTR explicitly recognized that, in contrast to agreements to commit other crimes, agreements to commit genocide should be punished because of the very "serious nature of the crime of genocide." *See Prosecutor v. Musema*, Case No. ICTR-96-13-T, Judgment, ¶ 185 (Jan. 27, 2000). Genocide, as a crime of mandatory response by state parties to the Genocide Convention, creates an entirely unique set of responsibilities and liabilities for states. Conspiracy to commit genocide is the only conspiracy offense recognized as a separate crime in the statutes of the ICTY and ICTR – further evidence that with respect to other tribunal offenses, their drafters rejected conspiracy as a stand-alone crime.

Conspiracy to commit the extraordinary crime of genocide is not applicable to this case. *See* Statute of the International Criminal Tribunal for Rwanda art.

12

2(3)(b), Nov. 8, 1994, 33 I.L.M. 1602; Statute of the International Criminal Tribunal for the Former Yugoslavia art. 4(3)(b), May 25, 1993, 32 I.L.M. 1192. Conspiracy with respect to genocide is unique, and the international community has accepted it, specifically, for two reasons: first, the sheer enormity of wrongdoing that is genocide, and second, the elaborate and far-reaching planning inherent in a crime as vast and complex as genocide.

The offense of genocide is a complex crime that necessarily involves intricate planning and a systematic implementation. *See* Major Joseph A. Keeler, *Genocide: Prevention Through Nonmilitary Measures*, 171 Mil. L. Rev. 135, 163-70 (2002). The universally accepted definition of genocide requires "intent to destroy, in whole or in part, a national, ethnical, racial or religious group." Rome Statute of the International Criminal Court art. 6, 37 I.L.M. 1002, 2187 U.N.T.S. 90 (1998). To satisfy this element of intent, there "must be actual or attempted destruction of the physical existence of the group, not merely an attempt to alter or influence the economic, social or cultural character of the group . . . ." Lucy Martinez, *Prosecuting Terrorists at the International Criminal Court: Possibilities and Problems*, 34 Rutgers L.J. 1, 23 (2002).[6] In sum, the crime of conspiracy to commit genocide is wholly unlike conspiracy to commit terrorism. Conspiracy to

---

[6] Isolated acts of terrorism, such as the bombing of the U.S.S. Cole, are not acts of genocide under international law. *See* Lucy Martinez, *Prosecuting Terrorists at the International Criminal Court: Possibilities and Problems*, 34 Rutgers L.J. 1, 26 (2002).

commit genocide is different both in its enormity and the intricacy of planning and organization (conspiring) it requires.

The international community has signaled that conspiracy should not be extended further than the crime of genocide. The drafters of the Rome Statute of the International Criminal Court chose not to include conspiracy as a punishable offense, *even* for the commission of genocide. The Rome Diplomatic Conference concluded that conspiracy was "a concept that ha[d] not found the support of all the civil law countries present" during the drafting of the statute. Antonio Cassese, *Genocide, in The Rome Statute of the International Criminal Court: A Commentary* 335, 347 (Cassese, Gaeta & Jones eds., 2002). Except in the context of genocide, "every relevant international treaty on international humanitarian law or international criminal law had deliberately avoided the concept and language of conspiracy." George P. Fletcher, *Hamdan Confronts the Military Commissions Act of 2006*, 45 Colum. J. Transnat'l L. 427, 448 (2007); *see also* Roger S. Clark, *The Military Commissions Act of 2006: An Abject Abdication by Congress*, 6 Rutgers J.L. & Pub. Pol'y. 78, 99-105 (2008).

In sum, the crime of conspiracy for war crimes is not found in any treaties governing international criminal law, it has not been prosecuted by an international criminal tribunal, and it is not part of customary international law. As a result, it is not an offense against the law of war.

14

## II.    THE CRIME OF CONSPIRACY IS INAPPROPRIATE WITHIN THE CONTEXT OF ARMED CONFLICT.

International rejection of the crime of conspiracy as a violation of the law of war is firmly based in the unique realities of armed conflict. Conspiracy permits punishment for simply agreeing to be a member of an organization that may commit a crime. *See* David B. Filvaroff, *Conspiracy and the First Amendment*, 121 U. Pa. L. Rev. 189, 191 (1972) ("It is the agreement itself which is the touchstone of illegality, irrespective of whether or not efforts have actually been made to implement prohibited objectives, and apparently without regard even to whether the combination is capable of achieving them."). A defendant does not even need to effectuate any crime to be punished for conspiracy, because it "imposes criminal liability at the earliest and most tentative stages of a criminal endeavor – as soon as two people agree, however halfheartedly, to commit a crime." *See* Benjamin E. Rosenberg, *Several Problems in Criminal Conspiracy Laws and Some Proposals for Reform*, 43 Crim. L. Bull. 427, 432 (2007).

By contrast, the law of armed conflict has persistently focused on concrete violations, avoiding membership-based sanctions, even when regulating the actions of non-state actors. Imposing punishment for such agreements in the context of armed conflict would expose all members of a military organization to equal liability, regardless of their behavior or standing in the organization. Courts have recognized that with respect to membership in military organizations, it is illogical

15

to punish agreements. "A person in the military service . . . is acting under the compulsion of the grave penalties which military law traditionally prescribes for nonobedience to military orders. Participation in a crime actuated solely by the compelling fear of personal harm negatives the very requisites of conspiracy." *United States v. Saglietto*, 41 F. Supp. 21, 33 (E.D. Va. 1941).

Furthermore, the circumstantial evidence normally used to prove crimes of conspiracy is not a practical or rational method to demonstrate wrongdoing in the fog of war.[7]   *See* David Cole, *Out of the Shadows: Preventive Detention, Suspected Terrorist and War*, 97 Cal. L. Rev. 693, 711 (2009) (recognizing the difficulty of gathering evidence in military conflict). Former Chief Judge Patricia Wald of this Circuit has recognized the unique evidentiary problems of prosecuting war crimes. *See* Patricia M. Wald, *To "Establish Incredible Events by Credible Evidence": The Use of Affidavit Testimony in Yugoslavia War Crimes Tribunal Proceedings*, 42 Harv. Int'l L.J. 535, 536 (2001).

In addition, the focus of conspiracy on the notion of collective wrongdoing, as opposed to individualized guilt, does not accord with the realities of war. "[T]he

---

[7] In many conspiracy prosecutions, the case must be proved through circumstantial evidence. *Cf.*, *Glasser v. United States*, 315 U.S. 60, 80 (1942) ("Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a development and collocation of circumstances") (internal quotations omitted); Note, *Developments in the Law: Criminal Conspiracy,* 72 Harv. L. Rev. 920, 984 (1959) ("Since conspiracy is a crime which by its nature tends to be secret . . . [m]ost conspiracy convictions therefore rest on inferences from circumstantial evidence.").

practical impact of conspiracy doctrines is to aggravate individual criminal liability by making co-conspirators liable for any and all substantive offenses committed by members of the group." George P. Fletcher, *The Storrs Lectures: Liberals and Romantics at War: The Problem of Collective Guilt*, 111 Yale L.J. 1499, 1512 (2002). Punishing collective guilt presents a variety of damaging consequences in the context of armed conflict. These prosecutions have the ability to implicate minor figures who, in reality, have not participated in the egregious actions of the larger organization. *See* Neal Katyal, *Gitmo' Better Blues,* Slate (Mar. 19, 2004), http://www.slate.com/id/2097397 (arguing that the current prosecutions by the United States have focused on inconsequential figures who have not committed serious war crimes). Moreover, a focus on group transgressions can lead to the damaging "imposition of collective guilt on an ethnic, religious, or other group," which undermines the value of international criminal tribunals. *See* Richard Goldstone, *Justice as a Tool for Peace-Making: Truth Commissions and International Criminal Tribunals*, 28 N.Y.U. J. Int'l L. & Pol. 485, 488 (1996). For these reasons, Article 33 of the Fourth Geneva Convention expressly prohibits collective punishment, stating that "[n]o protected person may be punished for an offense he or she has not personally committed." Fourth Geneva Convention, art. 33.

      Violations of the law of war are distinctly different from domestic criminal

law. Prosecutions that may be appropriate in times of peace are unacceptable in times of war. "[I]n war something more is required than evidence that one might have agreed in some vague or ambiguous way, or inferentially by simply being in close proximity to the master planners and implementers, with a plan or design to violate the law of war." David Scheffer, *Why Hamdan is Right about Conspiracy Liability*, Jurist (Mar. 30, 2006), http://jurist.law.pitt.edu/forumy/2006/03/why-hamdan-is-right-about-conspiracy.php; *see also* William Winthrop, *Military Law and Precedents* 840 (2d ed. 1920) ("the jurisdiction of the military commission should be restricted to cases of offence consisting in *overt acts*"). As noted by Telford Taylor, "[w]ar consists largely of acts that would be criminal if performed in time of peace." Telford Taylor, *Nuremberg and Vietnam: An American Tragedy* 19 (1970). There is little doubt that if the crime of conspiracy were truly a violation of the law of war, thousands of American servicemen and women could be subjected to criminal prosecutions. For example, "[i]f we are fully to assign blame for the [My Lai] massacre, then, there are a large number of officers whom we would have to condemn." Michael Walzer, *Just and Unjust Wars* 322 (1977).

The international community, in treaties, declarations, and practice, has realized that inchoate crimes such as conspiracy are not suited to address offenses committed in the midst of armed conflict. Prosecuting conspiracy under the law of war would damage the integrity and credibility of international criminal tribunals

18

and the coherence of the laws of war themselves. The crime of conspiracy is not a violation of the law of war and, therefore, cannot be prosecuted in the military commissions.

## CONCLUSION

Since its beginnings, the United States has recognized and respected the law of war and the proper role of military justice. The United States was a leader at Nuremburg, upholding the rule of law in the face of unspeakable atrocities. The United States must conform its prosecutions in military tribunals to the Supreme Court's direction in *Hamdan* that those prosecutions only be for violations of the law of war. As demonstrated here, conspiracy is not an offense against the law of war. The sources of international law, from which the law of war is defined, preclude this prosecution in a military commission.

June 10, 2013                                     Respectfully submitted,

                                                  /s/ William Aceves

                                                  Counsel for *Amici Curiae*

                                                  William J. Aceves
                                                  California Western School of Law
                                                  225 Cedar Street
                                                  San Diego, CA  92101
                                                  (619) 525-1413
                                                  wja@cwsl.edu

19

David Weissbrodt
University of Minnesota Law School
229 19th Ave. South
Minneapolis, MN 55455
(612) 625-5027
weiss001@umn.edu

# APPENDIX[8]

**John M. Bickers** is a Professor of Law at Northern Kentucky University Salmon P. Chase College of Law. He was previously a Judge Advocate General and served in the United States Army for more than two decades. His publications include *Too Little, Too Late? Why President Obama's Well-Intentioned Reforms of the Military Commissions May Not Be Enough to Save Them*, 31 Whittier L. Rev. 381 (2010) and *Military Commissions Are Constitutionally Sound: A Response To Professors Katyal And Tribe*, 34 Tex. Tech L. Rev. 899 (2003), which was cited by the Supreme Court in *Hamdan v. Rumsfeld*.


**Roger S. Clark** is a Board of Governors Professor at Rutgers University School of Law Camden. He has been teaching and writing on the international protection of human rights for nearly fifty years. He is co-author of *International Criminal Law: Cases and Materials* (LexisNexis 3d ed. 2009) and *Understanding International Criminal Law* (LexisNexis 2d ed. 2008).


**Geoffrey S. Corn** is a Professor of Law at South Texas College of Law. Previously he served as the Army's senior law of war expert in the Office of the Judge Advocate General and Chief of the Law of War Branch in the International

---

[8] Institutional affiliations are listed for informational purposes only.

Law Division. He spent 21 years on active duty in the Army, retiring in the rank of Lieutenant Colonel in the Judge Advocate General's Corps. He is co-author of *Principles of Counter-Terrorism: A Concise Hornbook* (Thompson-West 2010) and *War on Terror and the Laws of War: A Military Perspective* (Oxford University Press 2009).

**Robert K. Goldman** is Louis C. James Scholar and professor of law at American University Washington College of Law. He has served on the International Commission of Jurists' Eminent Jurists Panel on Terrorism, Counter-Terrorism and Human Rights, as the UN Human Rights Commission's Independent Expert on the protection of human rights and fundamental freedoms while countering terrorism, and as President of the Organization of American States' Inter-American Commission on Human Rights. His publications include *The Protection of Human Rights: Past, Present and Future* (1972) and *The International Dimension of Human Rights: A Guide For Application in Domestic Law* (2001), as well as numerous other books, reports, papers and articles.

**Kevin Jon Heller** is Associate Professor & Reader at Melbourne Law School and serves as Project Director for International Criminal Law at the Asia Pacific Centre for Military Law, a joint project of Melbourne Law School and the Australian

22

Defence Force.  As of January 2014, he will be Professor of Criminal Law at the University of London's School of Oriental and African Studies (SOAS).  Professor Heller's academic writing has appeared in a variety of journals, including the *European Journal of International Law*, the *American Journal of International Law*, the *Journal of International Criminal Justice*, the *Harvard International Law Journal*, the *Michigan Law Review*, the *Leiden Journal of International Law*, the *Journal of Criminal Law & Criminology*, *Criminal Law Forum*, and the *Georgetown International Environmental Law Review*.  His book *The Nuremberg Military Tribunals and the Origins of International Criminal Law* was published by Oxford University Press in June 2011, and Stanford University Press published his edited book (with Markus Dubber) *The Handbook of Comparative Criminal Law* in February 2011.

**Kristine A Huskey** is an adjunct professor on national security at Georgetown University Law Center, an associate at the Robert Strauss Center on International Security and Law, and the founder of the National Security Clinic at the University of Texas School of Law.  Included in her publications are: "A Strategic Imperative: Legal Representation of Unprivileged Belligerents in Status Determination Proceedings," "Accountability for Private Military and Security Contractors in the International Legal Regime," numerous other articles and book chapters addressing

23

national security and international law, and the book, *Justice at Guantanamo: One Woman's Odyssey and Her Crusade for Human Rights*.

**Hope Metcalf** directs the Arthur Liman Public Interest Program and co-teaches the Allard K. Lowenstein International Human Rights Clinic at Yale Law School. Metcalf formerly directed the National Litigation Project of the Lowenstein Clinic, formed in 2002 to address human rights violations arising out of U.S. counterterrorism policies. She has represented numerous alleged unlawful belligerents in habeas petitions, civil damages actions, and military commissions proceedings and has filed amicus briefs in many post-9/11 cases before the Supreme Court and courts of appeals. Metcalf is a graduate of Yale University and New York University School of Law and clerked for the Honorable Justice Virginia Long of the New Jersey Supreme Court.

**Fionnuala D. Ní Aoláin** holds the Dorsey & Whitney Chair in Law at the University of Minnesota Law School. She is also the co-founder and associate director of the Transitional Justice Institute at the University of Ulster. Her research interests include international law, human rights law, national security law, transitional justice, and feminist legal theory. She is author of *The Politics of Force: Conflict Management and State Violence in Northern Ireland* (Blackstaff

24

Press 2000), and is co-author of *Law in Times of Crisis: Emergency Powers in Theory and Practice* (Cambridge University Press 2006) and *International Human Rights: Law, Policy, and Process* (LexisNexis 4th ed. 2009).


**Deborah Pearlstein** joined the Cardozo faculty following her tenure as an Associate Research Scholar in the Law and Public Affairs Program at the Woodrow Wilson School for Public and International Affairs at Princeton University, and visiting appointments at the University of Pennsylvania Law School and Georgetown University Law Center. Her research focuses on national security law and the separation of powers, and has appeared in journals including the Harvard Law Review, University of Pennsylvania Law Review, and Columbia Human Rights Law Review.


**Marco Sassòli** is Professor of Law and Director of the Department of International Law and International Organisation of the University of Geneva, and Associate Professor at the University of Quebec in Montreal. He is member of the International Commission of Jurists and chaired from 2004-2013 the Board of Geneva Call, an NGO which engages with armed non-State actors to adhere to humanitarian norms. He worked for the International Committee of the Red Cross

25

from 1985-97. He has also served as Executive Secretary of the International Commission of Jurists and as Registrar at the Swiss Supreme Court.


**Jens David Ohlin** is an Assistant Professor of Law at Cornell University Law School. His research and teaching interests are focused on criminal law theory, public international law, and international criminal law. His works include *Joint Intentions to Commit International Crimes*, 11 Chi. J. Int'l L. 693 (2011); *Group Think: The Law of Conspiracy and Collective Reason*, 98 J. Crim. L. & Criminology 147 (2008); and *Defending Humanity: When Force is Justified and Why* (Oxford University Press 2008) (with George Fletcher).


**Gabor Rona** is the International Legal Director of Human Rights First. He represents Human Rights First on matters of international human rights and international humanitarian law. He previously served as a Legal Advisor to the International Committee of the Red Cross (ICRC) in Geneva, where he focused on the application of international humanitarian and human rights law to counter-terrorism policies and practices. He also represented the ICRC in connection with the establishment of the International Criminal Court and other tribunals. He has taught International Humanitarian Law and International Criminal Law at the International Institute of Human Rights in Strasbourg, France and the University

Centre for International Humanitarian Law in Geneva, Switzerland. He presently teaches International Humanitarian Law at Columbia Law School.

**David Sloss** is Professor of Law and Director of the Center for Global Law and Policy at Santa Clara Law. He is co-editor of *International Law in the U.S. Supreme Court: Continuity and Change* (Cambridge University Press 2011) and editor of *The Role of Domestic Courts in Treaty Enforcement: a Comparative Study* (Cambridge University Press 2009).

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)

I hereby certify, pursuant to Fed. R. App. P. 32(a)(7)(C) and D.C. Circuit Rule 32(a), that the foregoing brief is proportionally spaced, has a typeface of 14 point, and contains 5,830 words, (which does not exceed the applicable 7,000 word limit).


Dated:        June 10, 2013                Respectfully submitted


                                           /s/ William J. Aceves

                                           William J. Aceves
                                           California Western School of Law
                                           225 Cedar Street
                                           San Diego, CA 92101
                                           (619) 525-1413
                                           wja@cwsl.edu

                                           Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I, William J. Aceves, the undersigned, hereby certify that I am employed by California Western School of Law at 225 Cedar Street, San Diego, California 92101. I further declare under penalty of perjury that on June 10, 2013, I caused to be served a true copy of the foregoing Brief of *Amici Curiae* International Law Scholars via the Court's CM/ECF electronic filing system.  In addition, I mailed a copy through the U.S. mail service, first class, to the following persons:

Ms. Lisa O. Monaco
U.S. Department of Justice (DOJ)
Office of the Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530

Mr. Steven Michael Dunne
U.S. Department of Justice (DOJ)
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530


Dated:          June 10, 2013          Respectfully submitted


                                       /s/ William J. Aceves

                                       William J. Aceves
                                       California Western School of Law
                                       225 Cedar Street
                                       San Diego, CA 92101
                                       (619) 525-1413
                                       wja@cwsl.edu

                                       Counsel for *Amici Curiae*

29