**[Oral Argument Scheduled October 22, 2014]**
**No. 11-1324**
_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

Ali Hamza Suliman Ahmad Al Bahlul,
Petitioner,
v.
United States of America,
Respondent.
_____

ON APPEAL FROM THE COURT OF MILITARY COMMISSION REVIEW
(CASE NO. CMCR-09-0002)
_____

BRIEF OF *AMICUS CURIAE* PROFESSOR DAVID GLAZIER
IN SUPPORT OF PETITIONER AND REVERSAL

HOLLAND & KNIGHT LLP
Robert Barton (Bar No. 55467)
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Robert.Barton@hklaw.com
213-896-2503

Thomas J. McIntosh (Bar No. 52523)
800 17th Street, NW, Suite 1100
Washington, DC  20006
Thomas.McIntosh@hklaw.com
202-955-3000

*Counsel for Amicus Curiae, Professor*
*David Glazier, Loyola Law School of*
*Los Angeles*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................**i**

**TABLE OF AUTHORITIES** ...........................................................**ii**

**STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE**..............................................................**1**

**AMICUS' STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS**......................................................................**2**

**I.   INTRODUCTION AND SUMMARY OF ARGUMENT**.........................**2**

**II.  ARGUMENT**....................................................................**4**

   **A.   MILITARY COMMISSIONS LACK JURISDICTION TO TRY THE OFFENSE OF CONSPIRACY UNDER THE DEFINE AND PUNISH CLAUSE OF THE CONSTITUTION**..................................**4**

     **1.   Military Commission Jurisdiction is Drawn from the Define and Punish Clause** ......................................................**4**

     **2.   The Define and Punish Clause Limits Military Commissions to International Law of War Violations**.............................**6**

   **B.   THE LINCOLN TRIAL IS NOT A USEFUL PRECEDENT** .................**10**

     **1.   The Lincoln Trial was a Mixed Military Commission and Drew Part of its Jurisdiction From Domestic Law, Allowing the Charge of Conspiracy** .........................................................**10**

     **2.   The Lincoln Trial Charged Defendants for a Completed Conspiracy, Not Inchoate Conspiracy**........................................**15**

     **3.   Attorney General Speed's Opinion Justifying the Military Trial Supports al Bahlul's Position**........................................**18**

   **C.   THE NAZI TRIALS ARE NOT USEFUL PRECEDENTS IN APPELLANT'S CASE** ....................................................**21**

     **1.   *Quirin* Did Not Consider the Charge of Conspiracy**.............**21**

     **2.   The Colepaugh Trial** .......................................................**23**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** .............................**29**

**CERTIFICATE OF SERVICE** .......................................................**30**

**III. CONCLUSION** ................................................................**27**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Al Bahlul v. United States*,
  2014 WL 3437485 (D.C. Cir., July 14, 2014) .................. 2,5,6,9,10,18,21,23, 24

*Colepaugh v. Looney*,
  235 F.2d 429 (10th Cir. 1956) ............................................................26

*Dooley v. United States*,
  182 U.S. 222 (1901)..............................................................................7

*Ex parte Milligan*,
  71 U.S. 2 (1866)................................................................................5, 13

*Ex parte Quirin*,
  317 U.S. 1 (1942)....................................................... 5,7,8,21,22,23,24,26,27

*Hamdan v. Rumsfield*,
  548 U.S. 557 (2006)...............................................................4,7,8,22

*Jecker v. Montgomery*,
  54 U.S. (13 How.) 498 (1851) ..............................................................4

*Madsen v. Kinsella*,
  343 U.S. 341 (1952)..............................................................................4

*Pinkerton v. United States*,
  328 U.S. 640 (1946)............................................................................17

*Reid v. Covert*,
  354 U.S. 1 (1957)................................................................................12

C<small>ONSTITUTION AND</small> S<small>TATUTES</small>

U.S. Const., Art. 1, § 8, cl. 10............................................................2, 5

U.S. Const., Art. III, § 1, § 2, cl.3 ........................................................2

*Authorities upon which we chiefly rely are marked with asterisks.

CONSTITUTION AND STATUTES (CONT.)

U.S. Const., Amend. 14 ...........................................................................15

10 U.S.C. § 821 ........................................................................................9

**OTHER AUTHORITIES**

11 U.S. Op. Atty. Gen 297 (1865) ...............................................12, 19, 20

*David Glazier, *The Misuse of History: Conspiracy and the Guantánamo Military Commissions,*66 Baylor Law Review 295 (2014)
............................................................ 5, 7, 8, 10, 11, 12, 13, 14, 23, 24, 25, 26

David Glazier, *Precedents Lost: The Neglected History of the Military Commission*, 46 Va. J. Int'l L. 5 (2005) ...............................................9

Edward Steers, Jr., *Blood on the Moon* (2001)...................................13, 18

Henry Halleck, 2 *International Law* 444 ..................................................7

Instructions for the Government of Armies of the United Sates in the Field (Lieber Code), General Orders No. 100, arts. 27 & 40 (Apr. 24, 1863) .............7

Paul Finkelman, *John Bingham and the Background to the Fourteenth Amendment*, 36 Akron L. Rev. 671 (2003).........................................15

*The Trial: The Assassination of President Lincoln and the Trial of the Conspirators* (Edward Steers, Jr., ed.) (2003)...................................14, 15, 16, 17

William Winthrop, MILITARY LAW AND PRECEDENTS at pp. 839–40 (2nd ed. 1920), *available at* http://www.loc.gov/rr/frd/Military_Law/pdf/ML_precedents.pdf .........11, 12, 13

## STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE

*Amicus Curiae* David Glazier is a tenured professor of law and the Lloyd Tevis Fellow at Loyola Law School, Los Angeles and a nationally-recognized expert in the areas of international law, particularly the law of war, international criminal law, military justice, and national security issues. He writes and speaks extensively on these areas in general; but more specifically is a leading scholar of both historical and current military commission practice and law. He is also a retired U.S. Navy surface warfare officer who commanded a guided missile frigate, USS George Philip. Mr. Glazier's credentials have been more fully set out in the earlier brief filed on his behalf in this matter and therefore are not fully repeated here.

As *amicus curiae*, Glazier has an interest in assisting the Court in reaching a proper decision and thus to aid in the development of a sound body of law consistent with the U.S. Constitution, statutory law, and the obligations of the United States under international law, and to avoid the creation of precedent detrimental to the future safety and security of U.S. military personnel.

Counsel for all parties have consented to the filing of this brief.

1

## AMICUS' STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Pursuant to Fed. R. App. P. 29(c)(5), Glazier states that this memorandum is authored by himself and his *pro bono* counsel; no other party or person authored the brief in whole or in part or contributed money intended to fund its preparation or submission.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

This Court, sitting *en banc*, vacated the military commission charges of Petitioner Ali Hamza Suliman Ahmad Al Bahlul for the crimes of solicitation and material support for terrorism. *Al Bahlul v. United States*, 2014 WL 3437485 (D.C. Cir., July 14, 2014). The Court remanded to this panel four constitutional challenges raised by al Bahlul to his conviction for the inchoate crime of conspiracy.[1] Among these challenges, and the focus of this brief, are al Bahlul's contentions that his trial by military commission for conspiracy violates both (1) the Define and Punish Clause of Article I, authorizing Congress to "define and punish . . . Offenses against the Law of Nations" (U.S. Const. art. 1, § 8, cl. 10) and (2), Article III's commitment of the judicial power to the federal courts and mandate that "[t]he Trial of all crimes . . . shall be by jury" (U.S. Const. art. III, § 1, § 2, cl.3). These two constitutional claims are ultimately closely related; because the crime of conspiracy is not a violation of the international law of war, it exceeds

---

[1] Ct. Doc. No. 1502282.

the authority of Congress under both these constitutional provisions to place it within the jurisdiction of a military commission.

In earlier briefing by *amici* Professors David Glazier and Gary Solis,[2] *amici* explained there are no valid historical precedents or legal support in existing treaties or customary international law to support the argument that conspiracy is a violation of the law of war (a point the government now concedes). Therefore, *amici* argued that the military commission trying al Bahlul exceeded its lawful jurisdiction under the Define and Punish Clause by trying him for the offense of conspiracy.

*Amicus* respectfully submits this brief to expand the previous analysis on why the Define and Punish Clause does not permit al Bahlul's trial by military commission, to address the Article III issue, and, more specifically, to explain why the key examples relied upon by the *en banc* opinion, the Lincoln assassination conspiracy trial and supporting legal opinion of Attorney General James Speed, the 1942 Nazi Saboteur trial, and the 1945 spy trial of William Colepaugh and Erich Gimpel, are not credible precedents for the government's arguments. Indeed, the Speed opinion actually provides explicit support for both of al Bahlul's arguments.

---

[2] Ct. Doc. No. 1440546.

## II.     ARGUMENT

### A.     MILITARY COMMISSIONS LACK JURISDICTION TO TRY THE OFFENSE OF CONSPIRACY UNDER THE DEFINE AND PUNISH CLAUSE OF THE CONSTITUTION

#### 1.     Military Commission Jurisdiction is Drawn from the Define and Punish Clause

The jurisdiction of military commissions is subject to strict legal limits. As the Supreme Court recognized in *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) (*Hamdan I*), the military commission is a tribunal "born of military necessity," but "[e]xigency alone . . . will not justify the establishment and use of penal tribunals not contemplated by Article I, § 8, and Article III, § 1, of the Constitution unless some other part of that document authorizes a response to the felt need."[3] Thus, a military commission's jurisdiction is based on, and limited by, the powers enumerated in the Constitution.

Historically, three types of military commissions have been recognized. They have sat: (1) as U.S. military government courts in occupied enemy territory, a use first noted by Supreme Court dicta in *Jecker v. Montgomery*, 54 U.S. (13 How.) 498, 515 (1851)  as being part of the President's executive authority, before being explicitly upheld by *Madsen v. Kinsella*, 343 U.S. 341, 346-50 (1952); (2) as martial law courts in U.S. territory, a use prohibited when regular courts are open as a violation of Article III's commitment of the judicial power to the federal

---

[3] *Hamdan*, 548 U.S. at 590-91.

4

courts and jury trial rights by *Ex parte Milligan*, 71 U.S. 2 (1866), decided a year after active fighting in the Civil War ended; and (3) as law of war tribunals, judging the conduct of hostilities according to international legal rules equally applicable to both sides, a use first explicitly endorsed by *Ex parte Quirin*, 317 U.S. 1 (1942), which held that a law-of-war military commission draws its authority from Article I's grant to Congress of the power "[t]o define and punish . . . Offences against the Law of Nations."[4]   The *Quirin* Court recognized that Congress, "within constitutional limitations," may establish military commissions "to try persons for offenses which, according to the rules and precepts of the law of nations, and more particularly the law of war, are cognizable by such tribunals"[5] and that trial of "offenses committed by enemy belligerents against the law of war" constituted "an express exception from Article III."[6]   As the *en banc* Court in this case recognized, "[i]t is undisputed that the commission that tried Bahlul is of the third type: a law-of-war military commission."[7]

The answer to the questions remanded to this Court as to whether al Bahlul's inchoate conspiracy conviction violates either limits on congressional authority under the Define and Punish clause or Article III's commitment of the judicial

---

[4] U.S. Const. art. I, § 8, cl. 10; *Quirin*, 317 U.S. at 28.

[5] *Quirin*, 317 U.S. at 28.

[6] *See Quirin,* 317 U.S. at 40-41; David Glazier, *The Misuse of History: Conspiracy and the Guantánamo Military Commissions,* 66 Baylor Law Review 295, 300 (2014) [hereinafter "*Misuse of History*"].

[7] *Al Bahlul,* 2014 WL 3437485, at *2.

power to the federal courts, ultimately thus both turn on whether conspiracy is an offense recognized by the international law of war. While conspiracy is a crime under U.S. law and triable by U.S. federal courts, it is not recognized under the international law of war, and therefore it both exceeds the constitutional authority of Congress under the Define and Punish clause, and violates the separation of powers – specifically authority committed to the judiciary by Article III -- to make it triable by the Guantánamo military commissions.

2. **The Define and Punish Clause Limits Military Commissions to International Law of War Violations**

Notwithstanding the Define and Punish Clause's explicit incorporation of the "Law of Nations," the Government has previously suggested that Bahlul may be tried by military commission for "offenses cognizable under our domestic law of war."[8]   Judge Kavanaugh's dissent from the Court's *en banc* decision also advocates this view, framing the question before the Court as "whether U.S. military commission precedents treated conspiracy as an offense triable by military commission."[9] Judge Kavanaugh further contends that "[s]even Justices in *Hamdan* analyzed the 'law of war' . . . as the international law of war *supplemented by established U.S. military commission precedents*."[10] The Government's and Judge Kavanaugh's emphasis on domestic precedents as an

---

[8] Brief for the United States at 72 (July 10, 2013).
[9] *Al Bahlul*, 2014 WL 3437485, at *58 (Kavanaugh, J. dissenting).
[10] *Id.* (emphasis in original).

independent source of jurisdiction for military commissions is misplaced (and even if relevant, distinguishable because of the three different types of military commission jurisdiction exercised previously).

Both the Supreme Court and the Executive branch have consistently held that the "law of war" is a "branch of international law."[11]  Justice Steven's plurality opinion in *Hamdan I*—which supplies four of the seven votes cited by Judge Kavanaugh's dissent—did not upset this settled understanding. As Justice Stevens explained in his analysis, an act is a violation of the law of war when there is "universal agreement and practice both in this country and internationally."[12]  The plurality opinion further remarked that conspiracy "has rarely if ever been tried as such in this country by any law-of-war military commission not exercising some

---

[11] For explicit statements of this proposition, s*ee, e.g.*, *Dooley v. United States*, 182 U.S. 222, 230-31 (1901) (quoting with approval from Henry Halleck's 2 *International Law* 444 "the laws of war, as established by the usage of the world and by the writings of publicists and decisions of courts,-- in fine from the law of nations"); *Quirin*, 317 U.S. at 29; for the Executive branch perspective, *see e.g.* Instructions for the Government of Armies of the United States in the Field (Lieber Code), General Orders No. 100, arts. 27 & 40 (Apr. 24, 1863) (describing the law of war as a "branch" of the "law of nations"). Further explicit examples are discussed in Glazier, *Misuse of History, supra*, at 329-31, 339-40, and 356-57. Implicit support is found in the fact that virtually every legal discussion of the law of war during the eighteenth and nineteenth century cite as their source an international law treatise, most commonly those by Vattel, Wheaton, and Halleck.
[12] *Hamdan I*, 548 U.S. at 603.

other form of jurisdiction, *and does not appear in* either the Geneva Conventions or the Hague Conventions—*the major treaties on the law of war.*"[13]

To be sure, the *Hamdan I* plurality makes a single reference to the "American common law of war."[14]   However, as Judge Rogers noted in her separate *al Bahlul* opinion, the citation supporting this reference is to the page in *Quirin* where the Supreme Court declares that military commissions "within constitutional limitations . . . try persons for offenses which, according to the rules and precepts of the law of nations, and more particularly the law of war, are cognizable by such tribunals."[15]   This suggests that the "American common law of war" differs from the international law of war only in that there may be constitutional restrictions that would bar the U.S. from applying the full body of international law; it in no way suggests that the United States can *exceed* international law by defining its own rules or war crimes not recognized by the international community.[16]

It is also important to note that *Hamdan I* dealt with the law as it stood prior to the enactment of the Military Commissions Act of 2006, Pub. L. No. 109-366 (2006), and the Military Commissions Act of 2009, Pub. L. No. 111-84 (2009) (collectively, the "MCA"). As Judge Kavanaugh's dissent acknowledges, prior to

---

[13] *Id.* at 603-04 (emphasis added).
[14] *Id.* at 613.
[15] *Quirin*, 317 U.S. at 28.
[16] Glazier, *Misuse of History*, *supra*, at 321-22.

enactment of the MCA, statutory jurisdiction to try law of war violations relied on the "somewhat unusual negative phrasing" in 10 U.S.C. § 821,which "preserved the authority of military commissions to try offenses that had traditionally been tried by U.S. military commissions as of 1916 and 1950."[17] As a result, the Court in *Hamdan I* necessarily had to examine U.S. precedents to determine the scope of offenses triable by military commission;[18] again, it in no way suggests that the United States can *expand* the scope of offenses triable by military commission by engrafting a "domestic law of war" onto the recognized rules and precepts of the international law of war.  The jurisdiction of military commissions to try law of war violations must comply with statutes, with the Constitution and, by implication, with the *international* law of war. As the Government has already conceded that the charge of conspiracy is not a violation of the law of war, there is no jurisdiction to allow the trial for this charge by military commission in al Bahlul's case.

---

[17] *Al Bahlul*, 2014 WL 3437485, at *57 (Kavanaugh, J. dissenting); *see also* 10 U.S.C. § 821 ("conferring jurisdiction upon courts-martial do[es] not deprive military commissions . . . of concurrent jurisdiction with respect to offenders and offenses that . . . by the law of war may be tried by military commissions . . . .").
[18] *See* David Glazier, *Precedents Lost: The Neglected History of the Military Commission*, 46 Va. J. Int'l L. 5, 6-11 (2005)

B. **THE LINCOLN TRIAL IS NOT A USEFUL PRECEDENT**

1. **The Lincoln Trial was a Mixed Military Commission and Drew Part of its Jurisdiction From Domestic Law, Allowing the Charge of Conspiracy**

In Judge Kavanaugh's dissent in the *Bahlul en banc* ruling, he notes that: "At the time of Bahlul's conduct, neither any federal statute nor the international law of war proscribed conspiracy as a war crime triable by military commission."[19] Amicus agrees with Judge Kavanaugh's conclusion. However, where amicus respectfully differs with the Judge is in his subsequent assertion: "So the question we must decide is whether U.S. military commission precedents treated conspiracy as an offense triable by military commission."[20]

Because the three types of military commissions draw their jurisdiction from different sources, not all military commissions can be conducted in the same way. The jurisdiction of earlier commissions was not as limited as it is today; past military commissions prosecuting conspiracy, particularly during the Civil War, could do so based on domestic law alone, a combination of domestic law and contemporary understandings of the law of war, or else used the term "conspiracy" with respect to completed, rather than inchoate, conduct.[21]

---

[19] *Al Bahlul*, 2014 WL 3437485, at *58 (Kavanaugh, J. dissenting).
[20] *Id.*
[21] Glazier, *Misuse of History, supra*, at 300-01.  See also the discussion in Part II, *infra*.

Most Civil War commissions could include the application of domestic law as they typically sat as martial law courts in Union territory or as military government courts in the South. For example, many of the offenses tried by military commissions during the Civil War involved "breaching a duty of loyalty to the United States, which could be prosecuted under 'domestic' law (including both martial law and military government), but would hardly constitute 'war crimes,' which are now recognized as being 'serious violations' of the international law of war entailing individual criminal liability and subject to universal jurisdiction."[22]

In contrast, law of war commissions (the role in which al Bahlul's commission sat), have always applied actual international law. Identifying the type of military commission at issue is thus an indispensible part of the analysis, establishing the source of law, and ultimately, what crimes, it can subsequently try. Tribunals applying martial law or military government authority, in whole or in part, could have tried inchoate conspiracy under domestic law that placed the

---

[22] Glazier, *Misuse of History, supra*, at 312. Winthrop's treatise on military law lists "offenses in violation of the laws and usages of war" tried during the Civil War. Of those, only one offense still constitutes a war crime. Glazier, *Misuse of History, supra*, at 312-13; *see also* William Winthrop, MILITARY LAW AND PRECEDENTS at pp. 839–40 (2nd ed. 1920), *available at* http://www.loc.gov/rr/frd/Military_Law/pdf/ML_precedents.pdf).

offender on notice of their liability to prosecution for this offense, while dedicated law of war tribunals could not.[23]

The actual typology of the Lincoln trial is one reason why it cannot be relied upon as precedent for Guantánamo law of war commissions to try conspiracy. Although formally justified as a law-of-war commission, and including what are facially stated to be formal conspiracy charges—"For maliciously, unlawfully, and traitorously . . . combining, confederating and conspiring together," the Lincoln commission was actually of mixed law of war and martial law jurisdiction. Colonel William Winthrop, whom the Supreme Court has proclaimed "the Blackstone of American Military Law,"[24] and who had a unique inside perspective, having been assigned to the immediate office of the Army Judge Advocate General during the latter part of the Civil War, specifically identifies the Lincoln trial as having been a "mixed" commission in his authoritative military justice treatise.[25]  Even Attorney General James Speed's formal July 1865 Opinion written to justify the military trial, begins by noting that martial law had been declared in the District of Columbia even though the civil courts were open.  11 U.S. Op. Atty. Gen 297, 297 (1865).  It is essential to understanding these events to appreciate that at the time of Lincoln's assassination on April 14, 1865 and the subsequent trial of the

---

[23] Glazier, *Misuse of History, supra,* at 300-01.
[24] *Reid v. Covert*, 354 U.S. 1, 19, n. 31 (1957).
[25] Glazier, *Misuse of History, supra,* at 347-48; see also Winthrop, *supra*, at 839, n.5.

"conspirators," which concluded with the executions of four of the eight on July 7, 1865, U.S. military officials believed that martial law could be enforced, and military trials conducted, even in areas both remote from active hostilities and where regular civil courts were open.[26] The morning of the executions District of Columbia Supreme Court judge Andrew Wylie issued a writ of habeas corpus to halt Mary Surratt's hanging, but accepted the government's reply that President Andrew Johnson had suspended the writ in this case.[27]  As Winthrop explains in his treatise, it was understood by 19th century legal authorities that the suspension of the writ was itself an indicium of martial law.[28]  It was only after the Supreme Court's *Milligan* decision the following year that the availability of functioning civil courts was recognized as barring the concurrent exercise of martial law in the form of military commission trials.

This mixed nature of the Lincoln assassination trial is supported by close reading of the charges levied against the defendants:

> Charge - For maliciously, unlawfully, and traitorously, and in aid of the existing armed rebellion against the United States . . . combining, confederating, and conspiring together with [John H. Surratt, John Wilkes Booth, various Confederate leaders, and other Defendants], to kill and murder, within the Military Department of Washington, and within the fortified and entrenched lines thereof, Abraham Lincoln . . . and in

---

[26] Glazier, *Misuse of History*, supra, at 335-39.
[27] Edward Steers, Jr., *Blood on the Moon* 228-29 (2001).
[28] Winthrop, *supra*, at 819-20.

pursuance of and in prosecuting said malicious, unlawful, traitorous conspiracy aforesaid, and in aid of said rebellion . . . maliciously, unlawfully, and traitorously murdering the said Abraham Lincoln . . . .[29]

Specification- In this: that they, the [Defendants] . . . citizens of the United States aforesaid, and who were then engaged in armed rebellion against the United States of America, within the limits thereof, did…combine, confederate and conspire together…unlawfully, maliciously and traitorously to kill and murder Abraham Lincoln…and by the means aforesaid to aid and conform the insurgents engaged in armed rebellion against the said United States . . . to aid in the subversion and overthrow of the Constitution and laws of the said United States.[30]

Based on the defendants' identification as "citizens of the United States," and the characterization of their conduct by the adjective "traitorously," as well as the multiple references to the "armed rebellion," it can be concluded that the commission was intended to incorporate a domestic-law loyalty offense under martial law authority. In other words, the defendants were being prosecuted at least in part for breaching duties they owed to the United States as citizens, a matter of domestic law, rather than law of war, concern.[31]

---

[29] *The Trial: The Assassination of President Lincoln and the Trial of the Conspirators,* 18-19 (Edward Steers, Jr., ed.) (2003)[hereinafter "*The Trial*"].
[30] *Id.* at 19.
[31] For another example, *see* Glazier *Misuse of History, supra*, at 347-48.

2.    **The Lincoln Trial Charged Defendants for a Completed Conspiracy, Not Inchoate Conspiracy**

A second flaw with reliance on the Lincoln trial is that it did not actually involve prosecution for inchoate conspiracy. Obviously Lincoln *had* been murdered and the conspiracy completed. The detailed specifications – itemizing the conduct to be proved against each individual defendant – identified completed (e.g., Lincoln's assassination) and attempted (e.g., the assault on Secretary of State Seward's life) criminal acts rather than mere inchoate agreements.  Each defendant was addressed by at least one personal specification, identifying completed individual criminal conduct relying on traditional modes of liability sufficient to justify their conviction, ranging from Lewis Payne's personal attack on Seward, to the accusation against Samuel Arnold that he did "aid, counsel, abet, comfort, and support" Booth, Payne, and others.[32]

In his comprehensive reply to the arguments made by the various defense attorneys, Special Judge Advocate John A. Bingham (better known as the principle author of the first section of the Fourteenth Amendment[33]) made clear that the government considered the conspiracy charge to reflect a mode of liability by which all the defendants were personally accountable for the completed

---

[32] Proceedings of a Military Commission, Charges and Specification, in *The Trial*, supra, at 18-21.

[33] *See, e.g.*, Paul Finkelman, *John Bingham and the Background to the Fourteenth Amendment*, 36 Akron L. Rev. 671, 671 (2003).

15

assassination of Lincoln and the brutal wounding of Seward rather than simply parties to an inchoate agreement:

> If this conspiracy was thus entered into by the accused; if John Wilkes Booth did kill and murder Abraham Lincoln in pursuance thereof; if Lewis Payne did, in pursuance of said conspiracy, assault with intent to kill and murder William H. Seward, as stated, and if the several parties accused did commit the several acts alleged against them in the prosecution of said conspiracy, then, it is the law that all the parties to that conspiracy, whether present at the time of its execution or not, whether on trial before this court or not, are alike guilty of the several acts done by each in the execution of the common design. What these conspirators did in the execution of this conspiracy by the hand of one of their co-conspirators they did themselves; his act, done in the prosecution of the common design, was the act of all the parties to the treasonable combination, because done in execution and furtherance of their guilty and treasonable agreement . . . .

> As we have seen, this is the rule, whether all the conspirators are indicted or not; whether they are all on trial or not. "It is not material what the nature of the indictment is, provided the offence involve a conspiracy. Upon indictment for murder, for instance, if it appear that others, together with the prisoner, conspired to perpetrate the crime, the act of one done in pursuance of that intention world be evidence against the rest." (1 Whar., 706.) To same effect are the words of Chief Justice Marshall, before cited, that whoever leagued in a general conspiracy, performed any part, however minute, or however remote, from the scene of action, are guilty as principals.[34]

---

[34] Argument of John A. Bingham, in *The Trial*, *supra*, at 351, 402.

In modern terms, the Lincoln conspirators' trial reflected the application of "Pinkerton liability" four score years before the Court formally enunciated it – the ability to convict a defendant who participates in a criminal plot as a principal if other members of the groups actually commit, or attempt to commit, overt criminal acts towards its completion.[35]

If the prosecution involved completed acts, why did the government charge "conspiracy" as a substantive offense? The charge apparently served two larger purposes. First, by alleging ties between the conspirators and Confederate leadership, the government asserted that Lincoln was killed as part of the conduct of the war which justified a military rather than civilian trial.[36] Second, it laid the groundwork for the possible future prosecution of Confederate leaders, particularly Jefferson Davis,[37] who Union leaders had not yet decided how to deal with in the summer of 1865.

The effective charging of the defendants in the Lincoln trial with completed acts thus has no bearing on Appellant's challenge in the instant case, wherein he is charged with an inchoate act before a tribunal whose jurisdiction depends on the charge being a recognized offense under the international law of war.

---

[35] So called because of the formal recognition of this mode of liability in *Pinkerton v. United States*, 328 U.S. 640, 645-47 (1946).

[36] *See The Trial*, *supra*, at XXVIX-XXXVII for a detailed discussion of this historical context. *See also The Trial*, *supra*, at XII.

[37] *Id*. at XXX.

3.     **Attorney General Speed's Opinion Justifying the Military Trial Supports al Bahlul's Position**

Judge Henderson's opinion for the Court's *en banc* consideration of al Bahlul's appeal states that President Johnson asked his attorney general "whether the accused could be tried for conspiracy in a military commission" in the course of personally approving the convictions, and that "[i]n a lengthy opinion, Attorney General Speed said they could."[38]   There are two factual problems with this assertion.  First, although the military tribunal concluded its deliberations on May 30, 1865, Army Judge Advocate Joseph Holt did not carry the findings to the President for his approval until July 5, which Johnson then signed after questioning Holt about the proceedings, permitting the delivery of death warrants to the condemned the next morning.[39]   There was no time in this abbreviated process for Johnson to request, or Holt to prepare, the detailed Attorney General Opinion which was subsequently issued bearing only the date "July, 1865."  Logically the opinion was a response to preliminary questions about the validity of military jurisdiction and was likely researched and drafted while the trial was proceeding. But even more importantly, Speed's highly detailed and well crafted opinion says *nothing* about the validity of the conspiracy charge; the opinion is solely about the overall legitimacy of military jurisdiction over Lincoln's assassination rather than

---

[38] *Al Bahlul,* 2014 WL 3437485, at *16.

[39] *See* Steers, *Blood on the Moon*, *supra*, at 227.

any specific charge. The word "conspiracy" does not even appear anywhere in the opinion.

What Speed's formal Attorney General Opinion does do, however, is address in significant detail two of the core constitutional issues squarely before this court, whether the Define and Punish clause limits Congress to proscribing conduct recognized as violations of international law, and whether Congress may assign the trial of domestic crimes to a military commission.  Speed declares early on in the opinion:

> The laws of nations are expressly made laws of the land by the Constitution, when it says that 'Congress shall have power to define and punish piracies and felonies committed on the high seas, and offences against the laws of nations.' To *define* is to give the limits of precise meaning of a word or thing in being; to make is to call into being. Congress has power to *define*, not to make the laws of nations.11 U.S. Op. Atty. Gen 297, 299 (1865).

Speed goes on to note that "the laws of war constitute much the greater part of the law of nations"[40] before turning to the question of whether Article III of the Constitution limits the conspirators' trial to a regular federal court.  He observes that the Constitution mandates that "the trial of all crimes, except in cases of impeachment, shall be by the [sic] jury" as well the further requirements for grand jury indictment and speedy and public trial provided by the Fifth and Sixth Amendments, but explains at great length why military trial is appropriate for law

---

[40] 11 U.S. Op. Atty. Gen 297, 299 (1865).

of war violations.[41]  He concludes that such an outcome can be reconciled with the constitutional text because violations of international law are termed "offences" by the Define and Punish clause whereas Article III is addressing "crimes" – violations of domestic law.[42]

The implication of these conclusions with respect to al Bahlul's claims is quite clear.  First, the power granted to Congress under the Define and Punish clause is limited to actual violations of international law as recognized by the community of nations; Congress is not free to create new crimes or draw upon a "domestic law of war."  Second, the exception to Article III permitting military trials for law of war violations is limited to "offences" – actual violations of international law – precluding Congress from codifying an ordinary domestic crime not actually recognized by international law, such as conspiracy, and assigning it for trial by a military commission failing to provide the jury trial and grand jury indictment mandated by Article III, and the Fifth and Sixth Amendments.

---

[41] *Id*., at 302-17
[42] *Id*. at 310-14.

C.   **THE NAZI TRIALS ARE NOT USEFUL PRECEDENTS IN APPELLANT'S CASE**

1.   *Quirin* **Did Not Consider the Charge of Conspiracy**

Judge Kavanaugh also cites the trial of eight Nazi saboteurs who secretly crossed into the United States during World War II which was upheld by the Supreme Court in *Ex parte Quirin*, 317 U.S. 1 (1942) as support for the idea that there is precedent under American law for trying the crime of conspiracy by military commission.[43]  Judge Kavanaugh states:

> The second highest-profile and second most important U.S. military commission in American history was the military commission trial of the Nazi saboteurs who secretly crossed into the United States during World War II.  Again, the defendants were expressly charged with and convicted *of conspiracy,* as well as of another law of war offense.  The Attorney General of the United States personally prosecuted the case before the military commission.   President Franklin Roosevelt, the Commander in Chief of the Army and Navy, reviewed and affirmed all of the convictions.  Upon its review, the Supreme Court affirmed the saboteurs' convictions based on the other law of war offense, making it unnecessary to address conspiracy.  *See Quirin,* 317 U.S. at 46.  Like the Lincoln conspiracy precedent, the trial of the Nazi saboteurs still stands as a major precedent in which a U.S. military commission charged and convicted the defendants of conspiracy.

Id. (emphasis in original).[44]

---

[43] *Bahlul*, 2014 WL 3437485, at *59 (Kavanaugh, J. dissenting).
[44] Amicus discusses extensively in his article *Misuse of History*, *supra*, at 322-28, the problems with using this trial, as well as the 1945 spy trial of William

While it is true that the *Quirin* defendants were charged and convicted of conspiracy, as Justice Kavanaugh's acknowledges, the *Quirin* Court never acknowledged the validity of that specific charge because at the time, the existence of <u>any</u> valid charge was sufficient to justify the commission's jurisdiction.[45]   The first charge facing the *Quirin* defendants was:

> [B]eing enemies of the United States and acting for . . . the German Reich, a belligerent enemy nation, secretly and covertly passed, in civilian dress, contrary to the law of war, through the military and naval lines and defenses of the United States . . . and went behind such lines, contrary to the law of war, in civilian dress . . . for the purpose of committing . . . hostile acts, and, in particular, to destroy certain war industries, war utilities, and war materials within the United States.[46]

This instant charge and subsequent conviction constituted a crime which violated the law of war.[47]   As a result, the *Quirin* court had to look no further then this first charge to conclude the jurisdiction of the military commission in *Quirin* was proper, notwithstanding any possible defects with any of the other three charges.[48] And in fact, the *Quirin* Court expressly noted that it had no need to consider the

---

Colepaugh and Erich Gimpel as examples justifying trying conspiracy by military commission today.  As a result, only a brief summary is presented here.

[45] *Al Bahlul,* 2014 WL 3437485,*59 (Kavanaugh, J. dissenting).  This was a primary reason why the precedential value of this case was discounted by Justice Stevens in his opinion.  *See Hamdan,* 548 U.S. at 605-06 (citing to *Quirin*, 317 U.S. at 23).

[46] *Quirin*, 317 U.S. at 23.

[47] *See Hamdan,* 548 U.S. at 605-06 (citing to *Quirin*, 317 U.S. at 36).

[48] *Quirin*, 317 U.S. at 36.

validity of the other charges and refused to comment on them.[49]  Given the undisputed fact that the *Quirin* defendants had been convicted of a crime which accorded the military commission jurisdiction in their case and conspiracy was expressly not considered by the Court, *Quirin* does not provide any precedential value in the analysis of the question of whether conspiracy is a proper charge in Appellant's military commission.

2.    **The Colepaugh Trial**

Also cited as precedent by the Government and Justice Kavanaugh is the trial of a set of Nazi spies, Gimpel and Colepaugh in early 1945.[50]  Significant to Justice Kavanaugh's analysis were three facts: (1) that the "Assistant Attorney General Tom Clark produced a formal memorandum concluding—based in large part on the precedents involving the Lincoln conspirators and the earlier Nazi saboteurs—that conspiracy was a law of war offense triable by military commission;" (2) "President Truman reviewed and affirmed the convictions;" and (3) "the Tenth Circuit upheld the conviction, including the conspiracy

---

[49] *Id.* at 47-48; Glazier, *Misuse of History*, *supra*, at 322-23.

[50] Calling the defendants "saboteurs," seems to suggest substantial legal commonality between the events of 1942 and 1944/45 and imply that the *Quirin* precedent should be dispositive of any question with regard to the later trial. Unlike the 1942 infiltration, however, which was aimed at sabotaging American war production, Gimpel and Colepaugh's primary mission was espionage.  *See* Glazier*, Misuse of History*, *supra*, at 323-24 and materials cited therein.

conviction."[51]  However, none of these facts, and the subsequent analysis based on them, fare well under close scrutiny.

The Clark Memorandum is a March 12, 1945 document provided by the Government to the D.C. Circuit Court of Appeals during the pendency of al Bahlul's appeal, after the government stated it had "just discovered [the memorandum] at the St. Louis Branch of the National Archives."[52]  The memo was prepared by the Attorney General's office "[u]pon request of the board which [was] reviewing the proceedings had against Erich Gimpel and William Curtis Colepaugh" to address the validity of the charge of conspiracy "to commit an offense against the laws of war" and was forwarded to the Army by Tom C. Clark, who signed it as "Assistant Attorney General."[53]  The memo provides a series of short excerpts from the work of earlier U.S. military justice commentators, before falsely implying that the *Quirin* Court had upheld the conspiracy charge using the precise language that the Board ended up repeating.[54]

Given Clark's position as a civilian Assistant Attorney General and the fact that this was a military trial, one might conclude that this memo should be given the stature reserved for objective Department of Justice analysis, such as that ascribed to the Office of Legislative Counsel (OLC) today.   However, left

---

[51] *Al Bahlul*, 2014 WL 3437485, at *59 (Kavanaugh, J. dissenting).
[52] Glazier, *Misuse of History*, *supra*, at 326.
[53] *Id*.
[54] *Id*. at 326-27.

undisclosed was the fact that Clark headed the prosecution team. Further, Clark's forwarding memorandum is addressed only to the government, with no indication that the defense was provided a copy.[55] The Board does not mention the memo's existence in its review, nor is there any evidence that the defense was offered any opportunity to provide its own views or to comment on the Justice Department's submission. The fact that the Board even requested this opinion reinforces the suspicion that its members had real concerns about the conspiracy charge.[56] Interestingly, the Board took pains in its decision to note that "there was abundant evidence of overt acts committed by Colepaugh and Gimpel in pursuance of the conspiracy."

It is hard to see how government officials who either did not specifically address the validity of conspiracy as a law of war violation in their memorandum, or who baldly misrepresented the plain holding of a precedential U.S. Supreme Court decision should be given any meaningful deference by the courts on this issue. And it seems questionable whether an apparent ex parte filing of which key points are subsequently incorporated into the reported decision of the Board should really be considered as an independent source of additional authority. Indeed, these facts would suggest the need for more careful judicial scrutiny of arguments relying on such evidence rather than grounds for any significant deference.

---

[55] *Id.*
[56] *Id.* at 325.

With regard to President Truman's review, there is nothing in the supporting historical record indicating that he read the record or focused on the validity of the conspiracy charge.[57]  The General Order reporting the President's action merely states that he received a record of the trial and ultimately commuted the sentences of both men to life at hard labor.[58]

Finally, with regard to the Tenth Circuit review of Colepaugh's conviction, in that case the Court relied extensively on the Supreme Court's *Quirin* opinion to uphold Colepaugh's trial for having passed surreptitiously behind American lines but it never addressed the validity of the conspiracy charge.[59]  The Tenth Circuit found that the trial was justified because U.S. courts had recognized "a body of international common law known as the law of war."[60]  The decision thus offers no support for the claim that there is a separate American common law of war, and highlights the centrality of the misrepresentations of the actual scope of the *Quirin* decision in subsequent discussions of the validity of conspiracy charges.

Thus, while the Colepaugh trial may, at first glance, provide a solitary instance of the offense of conspiracy being charged in a law of war military commission, examining the historical record context of this trial and the repeated,

---

[57] *Id*. (citing War Dep't, General Orders No. 52, Jul. 7, 1945, reporting results of Truman's review).

[58] *Id.*

[59] *Colepaugh v. Looney*, 235 F.2d 429, 432 (10th Cir. 1956).

[60] *Id.* at 431-32; Glazier, *Misuse of History*, *supra*, at 327-28.

erroneous of analysis of *Quirin* demonstrates the insurmountable difficulties in using this case as useful precedent.

## III.     CONCLUSION

There is no historical support for the use of law of war military commissions to try "domestic" offenses failing to state an actual violation of international law recognized as such by the community of nations.  The Define and Punish clause is properly read to authorize Congress only to criminalize conduct violating "the law of nations," and the military commission can only claim an exception to the jury trial mandates of Article III if prosecuting recognized violations of the international law of war.

Dated:  August 18, 2014

Respectfully submitted,

/s/     Thomas J. McIntosh
Robert Barton (Bar No. 55467)
Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Robert.Barton@hklaw.com
213-896-2503

Thomas J. McIntosh (Bar No. 52523)
Holland & Knight LLP
800 17th Street NW, Suite 1100
Washington, DC  20006
Thomas.McIntosh@hklaw.com
202-955-3000

*Counsel for Amicus Curiae, Professor
David Glazier, Loyola Law School of
Los Angeles*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 29(d) and 32(a)(7)(B).  It contains 6,241 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  It has been prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 14-point font size and Time New Roman type.

Dated:  August 18, 2014                    By:    /s/     Thomas J. McIntosh
                                           *Counsel for Amicus Curiae, Professor David Glazier, Loyola Law School of Los Angeles*

29

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeal for the D.C. Circuit by using the appellate CM/ECF system on August 18, 2014.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  August 18, 2014                    By:    /s/     Thomas J. McIntosh     
                                                   *Counsel for Amicus Curiae, Professor David*
                                                   *Glazier, Loyola Law School of Los Angeles*